IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| LOIS A. BURGESS, *et al.*,<br>for themselves and as representatives of a<br>class of similarly situated persons,<br><br>          Plaintiffs.<br><br>          v.<br><br>THE UNITED STATES OF AMERICA,<br><br>          Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 09-242L<br><br>Judge Francis M. Allegra<br><br>*Electronically filed on July 8, 2011* |

UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

&

UNITED STATES' RESPONSE
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

TABLE OF CONTENTS

UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ................... 1

STATEMENT OF ISSUES PRESENTED .................................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES'
    CROSS-MOTION AND IN RESPONSE TO PLAINTIFFS' MOTION ........................... 3

I.     PRELIMINARY STATEMENT ..................................................................................... 3

II.    STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT ................... 3

III.   THE TRAILS ACT ......................................................................................................... 4

IV.  RELEVANT FACTUAL BACKGROUND .................................................................... 5

V.   ARGUMENT ................................................................................................................... 7

      A.    The construction of deeds, the analysis of the proper scope of any easements
           conveyed, and the elements and timing of extinguishment of Union Pacific's
           easements must be analyzed under Iowa law. ....................................................... 8

      B.    Those claimants who did not own property adjoining the rail corridor on the
           date the Surface Transportation Board issued its Notice of Interim Trail Use
           lack standing. ....................................................................................................... 9

           1.    The United States is entitled to summary judgment as to those
                  claimants who assert ownership of a parcel of property adjoining the
                  rail corridor, but who cannot proffer evidence that they owned that
                  parcel when the NITU was issued. ........................................................... 9

           2.    The United States is entitled to summary judgment as to those
                  claimants who assert a claim based on property that does not abut the
                  rail corridor. ........................................................................................... 10

      C.    The United States is entitled to summary judgment on those claimants whose
           properties adjoin segments of the rail corridor Union Pacific owned in fee. ....... 12

           1.    Plaintiffs have stipulated that some of the claimants' properties adjoin
                  segments of the rail corridor that Union Pacific held in fee. .................... 13

           2.    The United States is entitled to summary judgment on those claims
                  where the stipulated deed relevant the adjoining segments of the rail
                  corridor conveyed a fee interest to the railroad. ....................................... 13

           3.    The United States is entitled to summary judgment as to those
                  claimants who adjoin segments of the rail corridor that Union Pacific

held in fee based on deeds that were not identified in the parties' stipulations. ............................................................................................. 16

D.   The United States is entitled to summary judgment as to the Iowa Pacific right-of-way deeds because those deeds are not limited to railroad purposes only. ............................................................................................................... 18

  1.   The Iowa Pacific right-of-way deeds are not expressly limited to railroad purposes only and trail use falls within the scope of the easements those deeds convey. ................................................................. 19

  2.   The authorities Plaintiffs cite to support their argument that the Iowa Pacific right-of-way deeds are limited to railroad purposes only recite limiting language that cannot be found in the Iowa Pacific right-of-way deeds. ............................................................................................... 23

  3.   The Iowa Supreme Court's holding that trail use falls outside the scope of condemned railroad easements cannot be applied to the Iowa Pacific right-of-way deeds. ................................................................................. 25

E.   The United States does not object to the entry of summary judgment that the Trails Act preempts abandonment of railroad easements that are limited to railroad purposes under Iowa law and that the United States is, therefore, liable for a taking of an easement over affected segments of the rail corridor for railroad purposes. ................................................................................... 27

  1.   The easement taken is for railroad purposes and does not include trail use. ............................................................................................................. 28

  2.   Federal Circuit opinions addressing accrual of rails-to-trails taking claims underscore that the United States does not authorize non-conforming interim uses of rail corridors. ................................................. 31

  3.   The Federal Circuit's decisions in *Preseault* and *Towes* do not require a finding that the Surface Transportation Board authorized a non-conforming use in this case. ..................................................................... 32

VI.   CONCLUSION .................................................................................................... 34

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 3, 4

*Barclay v. United States*,
  443 F.3d 1368 (Fed.Cir. 2006) .............................................................................. 31, 33

*Brecht v. Abrahamson*,
  507 U.S. 619 (1993) ..................................................................................................... 34

*Burlington N.R.R. Co. v. Kmezich*,
  48 F.3d 1047 (8th Cir. 1995) ...................................................................................... 28

*Caldwell v. United States*,
  391 F.3d 1226 (Fed. Cir. 2004) ........................................................................... passim

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 3, 4

*Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*,
  230 F.3d 1375 (Fed. Cir. 1999) (unpublished) .................................................... 9

*Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*,
  37 Fed. Cl. 545 (1997) .................................................................................................. 9

*Ellamae Phillips Co. v. United States*,
  564 F.3d 1367 (Fed. Cir. 2009) ........................................................... 7, 8, 18, 24

*Glossmeyer v. United States*,
  45 Fed. Cl. 771 (2000) ................................................................................................. 9

*Goos v. Interstate Commerce Comm'n.*,
  911 F.2d 1283 (8th Cir. 1990) .................................................................................... 30

*Hash v. United States*,
  403 F.3d 1308 (Fed. Cir. 2005) ................................................................................... 8

*Hendler v. United States*,
  11 Cl. Ct. 91 (1986) .................................................................................................... 33

*Hendler v. United States*,
  952 F.2d 1364 (Fed. Cir. 1991) ............................................................................. 32, 33

*Illig v. United States*,
  58 Fed. Cl. 619 (2003) ................................................................................................. 29

*Ladd v. United States*,
    630 F.3d 1015 (Fed. Cir. 2010)........................................................................ 31, 33, 34

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................... 4

*Moden v. United States*,
    404 F.3d 1335 (Fed. Cir. 2005)............................................................................ 28

*Preseault v. Interstate Commerce Comm'n*,
    494 U.S. 1 (1990)........................................................................................... 4, 8, 26

*Preseault v. United States*,
    100 F.3d 1525 (Fed. Cir. 1996) (en banc)................................................... passim

*Toews v. United States*,
    376 F.3d 1371 (Fed. Cir. 2004)................................................................ 21, 27, 32

*Troha v. United States*,
    692 F. Supp. 2d 550 (W.D. Pa. 2010)................................................................... 8

## STATE CASES

*Butler v. Hoover Nature Trail, Inc.*,
    530 N.W.2d 85 (Iowa App. 1994) ........................................................................ 27

*Chevy Chase Land Co. v. United States*,
    733 A.2d 1055 (Md. 1999) ............................................................................. 21, 22

*Estate of Rockafellow v. Lihs*,
    494 N.W.2d 734 (Iowa App. 1992) ................................................................ 23, 25

*Haack v. Burlington N., Inc.*,
    309 N.W.2d 147 (Iowa App. 1981) ................................................................ 23, 24

*Hawk v. Rice*,
    325 N.W.2d 97 (Iowa 1982) .......................................................................... 23, 24

*Iowa v. Ahitow*,
    544 N.W.2d 270 (Iowa 1996) .............................................................................. 28

*Jacobs v. Miller*,
    111 N.W.2d 673 (Iowa 1961) .............................................................................. 10

*Johnson v. Burlington N., Inc.*,
    294 N.W.2d 63 (Iowa App. 1980) .................................................................. 23, 24

*Keokuk Junction Ry. Co. v. IES Indus., Inc.*,
    618 N.W.2d 352 (Iowa 2000) .............................................................................. 21

iv

*Lowers v. United States*,
663 N.W.2d 408 (Iowa 2003) ................................................................. passim

*Macerich Real Estate Co. v. City of Ames*,
433 N.W.2d 726 (Iowa 1988) ...................................................... 11, 12, 27, 28

*McDonnel v. Sheets*,
15 N.W.2d 252 (Iowa 1944) ................................................................. 20, 23

*McGrane v. Maloney*,
770 N.W.2d 851, No. 08-1502, 2009 WL 92048 (Iowa App. Apr. 8, 2009) (unpublished)
................................................................................................................. 23, 24

*McKinley v. Waterloo R.R. Co.*,
362 N.W.2d 131 (Iowa 1985) ............................................................... passim

*Milburn v. City of Cedar Rapids*,
12 Iowa 246, 1861 WL 248 (Iowa Oct. 17, 1861) .................................... 11, 22

*Moody v. Allegheny Valley Land Trust*,
976 A.2d 484 (Pa. 2009) ............................................................................ 21

*Notelzah, Inc. v. Destival*,
489 N.W.2d 744 (Iowa 1992) ..................................................................... 27

*Rinard v. Burlington & W. Rwy. Co.*,
23 N.W. 914 (Iowa 1885) ........................................................................... 11

*Schwartz v. Grossman*,
173 N.W.2d 57 (Iowa 1969) ....................................................................... 21

*Thompson v. City of Osage*,
421 N.W.2d 529 (Iowa 1988) ..................................................................... 26

*Wash. Wildlife Preservation v. States*,
329 N.W.2d 543 (Minn. 1983) ............................................................. passim

*Wiegmann v. Baeier*,
203 N.W.2d 204 (Iowa 1972) ..................................................................... 20

<u>U.S. CONSTITUTION</u>

U.S. Const. amend. V ...................................................................................... 7

<u>FEDERAL STATUTES</u>

16 U.S.C. § 1247(d) ...................................................................... 4, 5, 29, 33

49 U.S.C. § 10903 .......................................................................................... 5

Interstate Commerce Commission Termination Act of 1995,
　　Pub. L. No. 104-88, 109 Stat. 803 (1995) ........................................................................ 4

National Trails System Act Amendments of 1983,
　　Pub. L. No. 98-11, 97 Stat. 48 § 208(d) ......................................................................... 4

## CODE OF FEDERAL REGULATIONS

49 C.F.R. § 1152.1 ................................................................................................................ 4

49 C.F.R. § 1152.20 .............................................................................................................. 5

49 C.F.R. § 1152.29 .............................................................................................................. 5

49 C.F.R. § 1152.50 .............................................................................................................. 5

## FEDERAL RULES OF CIVIL PROCEDURE

Iowa Code § 327G.76 ................................................................................................ 11, 12, 27

Iowa Code § 327G.77 .......................................................................................... 11, 12, 27, 34

Iowa Code § 614.24 ....................................................................................................... 12, 15

## RULES OF COURT

R. Ct. Fed. Cl. 56 ........................................................................................................... 3, 4

## STATE CONSTITUTIONAL PROVISIONS

*Idaho N. & Pac. R.R. Co.*,
　　3 S.T.B. 50, 1998 WL 146208 (Surface Trnsp. Bd. Mar. 20, 1998) ................................ 30

*Policy Statement on Rails to Trails Conversions*,
　　1990 WL 287255 (Surface Transp. Bd. Jan. 29, 1990) ..................................................... 30

*Union Pacific R.R. Co. Abandonment Exemption in Cerro Gordo Cnty., IA*,
　　2005 WL 835611 (Surface Trasnp. Bd. Apr. 12, 2005) ................................................... 30

UNITED STATES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States of America cross-moves for partial summary judgment pursuant to Rule 56(c) of the Rules of the Court of Federal Claims ("RCFC").  Plaintiffs' lawsuit involves claims presented by four different categories of claimants:  (1) claimants who cannot show ownership of land adjoining the rail corridor on the date the Surface Transportation Board issued its Notice of Interim Trail Use ("NITU"); (2) claimants who own property adjoining segments of the rail corridor that Union Pacific Railroad Company ("Union Pacific") owned in fee; (3) claimants who own property adjoining segments of the rail corridor over which the Iowa Pacific Railroad Company acquired unlimited easements; and (4) claimants who own property adjoining segments of the rail corridor over which the railroad acquired easements obtained by condemnation or by deeds limited to railroad purposes only.  The United States moves for summary judgment in its favor as to the first three categories.  As to the fourth category, the United States does not object to the entry of summary judgment against it for the taking of an easement for railroad purposes.  The United States' grounds for summary judgment depend on the category of claimants.

The first step in the takings analysis is to determine whether a plaintiff owned the property allegedly taken on the date of taking.  Here, the United States moves for summary judgment as to the first category of claimants either because they provide no evidence that they owned the property on which they base their takings claim or because the property on which they base their takings claim does not adjoin the rail corridor.  The United States moves for summary judgment as to the second category of claimants because they had no ownership interest in the rail corridor, which Union Pacific owned in fee simple absolute.  *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc).  The United States moves for summary judgment as

to the third category of claimants on the ground that the relevant easements were not limited to railroad purposes only and embrace recreational trail use.

As to the fourth category of claimants, the United States, for the reasons discussed in greater detail in the accompanying memorandum, does not object to the entry of summary judgment against it for the taking of an easement for railroad purposes.  The easement taken is not one for recreational trail use.  This distinction flows from the plain language of the Trails Act and the Federal Circuit's recent decisions in rails-to-trails cases.

In support of this cross-motion, the United States submits this notice of cross-motion, the accompanying memorandum of points and authorities, together with supporting appendices submitted in support thereof, and its proposed findings of fact with referenced exhibits.

<u>STATEMENT OF ISSUES PRESENTED</u>

1.      Is the United States entitled to summary judgment with respect to those claimants who cannot prove that they owned property abutting the rail corridor on the date the NITU was issued?

2.      Is the United States entitled to summary judgment with respect to claimants who have failed to prove their property abuts the rail corridor?

3.      Is the United States entitled to summary judgment with respect to claimants who abut portions of the rail corridor that Union Pacific Railroad Company owned in fee simple absolute?

4.      Are Iowa Pacific Railroad Company's right-of-way deeds expressly limited to railroad purposes only?

5.      In those instances where the Trails Act preempted extinguishment of Union Pacific's easements, did the United States take an easement for railroad purposes or an easement for trail use?

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED
STATES' CROSS-MOTION AND IN RESPONSE TO PLAINTIFFS' MOTION</u>

I.      <u>PRELIMINARY STATEMENT</u>

Plaintiffs allege that the Surface Transportation Board's issuance of a NITU amounts to a

taking of their property under the Fifth Amendment.  2d Am. Compl. (Corrected) (Dkt. Entry

No. ("D.E.") 27) ¶ 53.  Plaintiffs moved for partial summary judgment as to 29 of the 77 total

claimants.  Pls.' Proposed Findings (D.E. 56) ¶ 6.  Plaintiffs' motion addresses only those

claimants who own property abutting segments of the rail corridor over which Union Pacific held

easements.  Plaintiffs argue that they are entitled to a liability finding as to these 29 claimants

because trail use falls beyond the scope of Union Pacific's railroad easements.

For the reasons summarized above and discussed in greater detail below, the United

States is entitled to summary judgment as to the first three categories of claimants.  As to the

fourth category of claimants, the United States does not object to the entry against it of summary

judgment for the taking of an easement for railroad purposes.

II.     <u>STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  RCFC 56(c).  A material fact is one that

could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable

jury to enter a verdict in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of

establishing the absence of a genuine issue of material fact and can satisfy this burden by

presenting evidence that negates an essential element of the non-moving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party can demonstrate

3

that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial.  *Id.*

Once the moving party meets its initial burden, the non-moving party "may not rely merely on allegations or denials in its own pleading."  RCFC 56(e)(2).  Instead, where the moving party's initial burden is met, the non-moving party, through affidavits or as otherwise provided in RCFC 56, must set forth specific facts showing a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324 (applying Fed. R. Civ. P. 56).  In evaluating motions for summary judgment, courts must draw any inferences from the underlying facts in the light most favorable to the non-moving party and may not engage in credibility determinations or weigh the evidence.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III.   THE TRAILS ACT

Congress enacted the Trails Act in an effort to preserve railroad corridors for possible future rail use by preempting state abandonment law.  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 7-8 (1990) (citing National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 48 § 208(d) (codified as amended at 16 U.S.C. § 1247(d))).  Pursuant to its rule-making authority, the Surface Transportation Board[1] published regulations concerning abandonment of and discontinuance of service over rail lines, including regulations relating to railbanking pursuant to the Trails Act.  49 C.F.R. §§ 1152.1-1152.60.  To pursue regulatory abandonment of a rail line or discontinuance of service over a rail line, rail operators must file an

---

[1]      When Congress enacted the Trails Act, the Interstate Commerce Commission was the administrative agency charged with the Act's implementation.  Congress abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board.  Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, 804, 807 §§ 101, 10501 (1995).  The Surface Transportation Board exercises all the powers and functions relevant to this lawsuit that the former Interstate Commerce Commission exercised.  *Id.* § 10501.

application for abandonment or discontinuance with the Surface Transportation Board.  49 U.S.C. § 10903; 49 C.F.R. § 1152.20 (establishing the regulatory framework for abandonment/discontinuance application).  In certain circumstances, a rail operator may initiate proceedings for exempt abandonment or discontinuance, which offers a more streamlined process.  49 C.F.R. § 1152.50 (regulatory framework for exempt abandonments and discontinuances).[2]

After a railroad initiates an exempted abandonment proceeding, a state, political subdivision, or qualified private organization may submit a petition in that proceeding indicating its interest in acquiring or using the subject rail corridor for interim use and railbanking under the Trails Act.  49 C.F.R. § 1152.29(a) .  If the rail operator agrees to negotiate an interim trail use agreement with the proposed trail operator, the Surface Transportation Board must issue a NITU. *Id.* § 1152.29(d)(1).  The NITU suspends the railroad's initial proceedings and provides a 180-day window for the rail operator and third party to negotiate an interim trail use agreement.  *Id*. If the parties enter into an interim trail use agreement, the abandonment proceedings are suspended and rail service is discontinued.  Interim trail use under that agreement "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).  If no railbanking agreement is reached, the rail operator may abandon the rail line, subject to the satisfaction of any other conditions of abandonment.  49 C.F.R. § 1152.29(d)(1).

IV.     RELEVANT FACTUAL BACKGROUND

Beginning in the 1870's, Iowa Pacific Railroad Company ("Iowa Pacific") obtained property rights in conjunction with its construction of the subject railroad corridor.  Iowa Pacific

---

[2]      Union Pacific filed a petition for exempted abandonment under 49 C.F.R. § 1152.50 in this case.

obtained its rights through a combination of right-of-way deeds and condemnation of rights-of-way.  *See, e.g.,* United States' Proposed Findings of Fact ("U.S. Proposed Findings") ¶ 59, Ex. 59 (example of Iowa Pacific right-of-way deed); *id.* ¶ 42, Ex. 42 (example of Commissioners' report on condemnation proceeding).  Generally, Iowa Pacific used a standard form of right-of-way deed, although the parties were free to make changes to those deeds.[3]  *See id.* ¶¶ 57, 62, Exs. 57, 62 (examples of modified deeds).  That standard form of right-of-way deed stated, in pertinent part:

> That in consideration of [dollar amount] . . ., and the benefit [the grantors] expect to derive from the construction of their road, [grantors' name] . . . hereby grant, convey, and confirm unto the said THE IOWA PACIFIC RAILROAD COMPANY, their successor and assigns forever, the RIGHT OF WAY for their Railroad, to-wit: A strip of land for that purpose one hundred feet wide across [legal description of land involved].

*See, e.g., id.* ¶ 59, Ex. 59.

In some instances, the rail operators relocated their rail line and obtained new right-of-way deeds for the relocated rail corridor.  *See id.* ¶ 27, Ex. 27.  These relocation deeds recited different language than was recited in Iowa Pacific's original right-of-way deeds:

> That [grantors], in the consideration of [dollar amount] . . ., do hereby Grant, Bargain, sell and convey unto [the railroad company], its successors and assigns forever, all that tract or parcel of land lying and being in the County of Butler and State of Iowa, described as follows, to-wit: [legal description of land involved].

*See, e.g., id.* ¶ 27, Ex. 27.

In addition, Iowa Pacific and its successors-in-interest also negotiated and obtained other follow-up conveyances for their rail corridor.  *See, e.g., id*. ¶ 39, Ex. 39.

Union Pacific became the successor-in-interest to this rail line.  Pls.' Proposed Findings (D.E. 56) ¶ 97, Ex. 68.  On June 9, 2003, Union Pacific filed with the Surface Transportation

---

[3]     Iowa Pacific's successor-in-interest, the Dubuque and Dakota Railroad Company ("Dubuque and Dakota"), also used Iowa Pacific's standard form of right-of-way deed.  *See, e.g.,* U.S. Proposed Findings ¶ 46, Ex. 46.

Board a petition for exemption from formal abandonment proceedings with respect to a segment on the eastern portion of the rail line. *Id.* The relevant rail line segment extends between milepost 318.36, near Hampton, and milepost 294.75, near Allison, a distance of 23.61 miles. *Id.* This segment lies in Franklin County and Butler County, Iowa. *Id.*

In response to Union Pacific's exemption petition, the Iowa Trails Council filed a petition with the Surface Transportation Board on July 1, 2003 indicating that it was interested in negotiating a trail use agreement with Union Pacific. *Id.* ¶ 99, Ex. 69. Union Pacific responded that it was willing to negotiate a trail use agreement with the Council. *Id.* ¶ 101, Ex. 70.

Based on the Council's and Union Pacific's mutual interest in exploring an agreement for railbanking with interim trail use, the Surface Transportation Board issued a NITU on September 26, 2003. U.S. Proposed Findings ¶ 1, Ex. 1. On August 4, 2008, the Iowa Natural Heritage Foundation, on behalf of the Conservation Boards of Franklin and Butler Counties and the Council, notified the Surface Transportation Board that it and Union Pacific successfully negotiated a trail use agreement. Pls.' Proposed Findings (D.E. 56) ¶ 103, Ex. 72.

## V.    ARGUMENT

The Fifth Amendment states in pertinent part:  "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  In order to prove a Fifth Amendment taking occasioned by the issuance of a NITU, Plaintiffs must prove that "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use."  *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing *Preseault*, 100 F.3d at 1543).  The Federal Circuit adopted a three-step analytic framework for analyzing takings claims under the Trails Act.  First, Plaintiffs must show that they have an ownership interest in segments of the rail corridor where the rail operator possesses an easement.  *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).  If the

7

railroad owns the relevant segment of the rail corridor in fee, the United States has no taking

liability.  *Preseault*, 100 F.3d at 1533.  Second, as to those segments of the rail corridor in which

the rail operator possesses an easement, Plaintiffs must show that trail use falls outside the scope

of the easement.  *Ellamae Phillips*, 564 F.3d at 1373.  If trail use falls within the scope of the

easements at issue, the United States generally has no takings liability.  *See Troha v. United*

*States*, 692 F. Supp. 2d 550, 560-64 (W.D. Pa. 2010).  Third, even if trail use falls within the

scope of the railroad easements, Plaintiffs may establish a taking by showing that the railroad

easement was abandonment—or, in Iowa parlance, extinguished—*before* the Surface

Transportation Board issued its NITU.  *Ellamae Phillips*, 564 F.3d at 1373.

> A.   The construction of deeds, the analysis of the proper scope of any easements
> conveyed, and the elements and timing of extinguishment of Union Pacific's
> easements must be analyzed under Iowa law.

Plaintiffs insist that no Federal Circuit decision or judge on the Court of Federal Claims

has held that railbanking or interim trail use fall within the scope of railroad easements.  Pls.'

Memo (D.E. 51) at Part VI.a.1.  This argument misapprehends takings jurisprudence under the

Trails Act.  The Supreme Court noted the need to analyze the ownership interests at issue under

applicable state law.  *Preseault*, 494 U.S. at 16.  And the Federal Circuit noted that an

examination of property interests in rails-to-trails cases requires a "close examination" of the

conveying instruments, read in light of the common law and the statutes of the applicable state.

*Preseault*, 100 F.3d at 1534 ("Ideally that question would be decided by the State of Vermont's

courts, utilizing their knowledge of and experience with their state's property law.").  Thus, for

example, the relevant question for this Court is not whether interim trail use falls within the

scope of various railroad easements under the laws of Vermont (*Preseault*, 100 F.3d at 1529),

Idaho (*Hash v. United States*, 403 F.3d 1308, 1310 (Fed. Cir. 2005)), Colorado (*Ellamae*

*Phillips*, 564 F.3d at 1368), or Missouri (*Glossmeyer v. United States*, 45 Fed. Cl. 771, 772

(2000)); the relevant inquiry is whether trail use falls within the scope of the deeded easements relevant to Plaintiffs' lawsuit under Iowa law.[4]

        B.    <u>Those claimants who did not own property adjoining the rail corridor on the date the Surface Transportation Board issued its Notice of Interim Trail Use lack standing</u>.

In this case, there is a category of claimants who lack standing for one of two reasons. First, three claimants have not provided evidence that they owned property abutting the right-of-way on the date the Surface Transportation Board issued the NITU. Second, thirteen claimants lack standing as to those parcels on which they base their claims, because those parcels do not adjoin the rail corridor.

        1.    <u>The United States is entitled to summary judgment as to those claimants who assert ownership of a parcel of property adjoining the rail corridor, but who cannot proffer evidence that they owned that parcel when the NITU was issued</u>.

Each claimant must prove that they owned the property rights allegedly taken when the takings claim accrued. *United States v. Dow*, 357 U.S. 17, 20-21 (1958). In this case, Plaintiffs' takings claims accrued when the Surface Transportation Board issued its NITU on September 26, 2003. *Caldwell*, 391 F.3d at 1235. There are three claimants who have provided no evidence that they owned the relevant property on that date. The parcels and claimants pertinent to this category include the following:

---

[4]    Plaintiffs' discussion of takings analysis under other states' laws is inapposite given Iowa's unique statutory handling of the divestiture of railroad easements. *Infra*, Part V.E. Plaintiffs also incorrectly assert that no judge on the Court of Federal Claims and no Federal Circuit decision has held that trail use falls within the scope of a railroad easement. Pls.' Memo. (D.E. 51) at Part IV.A.i. Yet in *Chevy Chase Land Co. of Montgomery County, Md. v. United States*, 37 Fed. Cl. 545 (1997), Judge Merow concluded that interim trail use fell within the scope of certain railroad easements under Maryland law. *Id.* at 585-87. The Federal Circuit affirmed Judge Merow's ruling in an unpublished opinion. *Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*, 230 F.3d 1375 (Fed. Cir. 1999) (unpublished) (citing *Chevy Chase Land Co. v. United States*, 733 A.2d 1055 (Md. 1999)).

| Claimant Identifier on Class Index | Name of Claimant |
|---|---|
| 63.B | Robin Eberline |
| 63.C | |
| 73.A | Alfred Johnson |
| 73.B | |
| 75.B | United Suppliers, Inc. |

The United States is entitled to summary judgment as to these claimants as to these above-identified parcels under *Dow*.[5]

> 2. The United States is entitled to summary judgment as to those claimants who assert a claim based on property that does not abut the rail corridor.

This category involves subdivided lots that do not adjoin the corridor but instead are separated from the rail corridor by a strip of land. The claimants who fall within this category are identified in the attached Appendix A. The United States moves for summary judgment as to these parcels because the claimants cannot show that they own the strip of land separating their subdivided lots from the rail corridor.

Under Iowa law, plaintiffs who wish to establish ownership in a rail corridor must determine whether the rail operator possessed a fee or an easement in the relevant segment of the corridor. Where the railroad company owns a fee interest in the rail corridor, Plaintiffs must show that they hold some enforceable reversionary or executory interest in the railroad line. *Jacobs v. Miller*, 111 N.W.2d 673, 675-76 (Iowa 1961). *But see McKinley v. Waterloo R.R. Co.*,

---

[5]     Plaintiffs already stipulated to the dismissal of the claims of Emery Dickman as to the parcels associated with tabs 69.C and 69.D of Plaintiffs' claim book. *See* Jt. Status Report (D.E. 48) at 2, Ex. A at Lines 69.C and 69.D. In addition, Plaintiffs have not provided a deed evincing Mark Uthe's ownership of the parcel associated with tab 47.B of their claim book. The United States understands that Plaintiffs believe they can establish Mr. Uthe's ownership of the parcel in question in the absence of a deed. The United States, therefore, will wait for Plaintiffs to proffer their evidence and reserves the right to challenge Mr. Uthe's standing if that evidence is not forthcoming. In this motion, the United States moves for summary judgment as to the parcel associated with tab 47.B on other grounds. *See infra* Parts V.B.2, V.D, Appx. A, E.

362 N.W.2d 131, 138 (Iowa 1985) (holding that reversionary interests were extinguished by operation of Iowa's stale-uses statute unless those claiming reversionary interests recorded a verified claim with the county recorder by July 5, 1966), *cited in Lowers v. United States*, 663 N.W.2d 408, 412 (Iowa 2003).[6]  Where the railroad company possesses an easement for railroad purposes only, extinguishment is governed by Iowa statute and adjoining landowners obtain title to the corridor once the easement is extinguished.  *Macerich Real Estate Co. v. City of Ames*, 433 N.W.2d 726, 729-30 (Iowa 1988) (citing Iowa Code §§ 327G.76, 327G.77).

Owners of subdivided lots own title to their lots only.  *Milburn v. City of Cedar Rapids*, 12 Iowa 246, 1861 WL 248, at *8 (Iowa Oct. 17, 1861) ("[T]here is no room to indulge the presumption that the purchaser takes any more land than is contained within the defined lines of his lot").  Their title does not extend to other lands beyond the lots identified in their subdivision maps.  *See Rinard v. Burlington & W. Rwy. Co.*, 23 N.W. 914, 915 (Iowa 1885) (holding that lot owner had no claim for damages from railroad placing debris in road abutting owner's lot because the owner "is not invested with the title to the land dedicated for a street").  Notably, there are claimants who own subdivided lots in this case whose properties adjoin the rail corridor because their deeds expressly include the strip of land separating their lots from the rail corridor. *See, e.g.,* U.S. Proposed Findings ¶ 17, Ex. 17.  In contrast, the deeds of the claimants identified in Appendix A do not describe vacated streets or alleys as part of the property conveyed.

These claimants' parcels do not adjoin the rail corridor.  Accordingly, these claimants can assert no interest in that corridor even assuming arguendo that the segments of the rail corridor in

---

[6]     None of the Plaintiffs adjoining segments of the rail corridor Union Pacific held in fee proffers evidence that their predecessors-in-interest filed verified claims required by Iowa Code § 614.24 (1966), *quoted in Lowers*, 663 N.W.2d at 412.  Accordingly, even if some of the fee conveyances to Union Pacific's predecessors-in-interest conveyed defeasible fee estates, those reversions are unenforceable under Iowa law.  *Lowers*, 663 N.W.2d at 412.

the general vicinity of these parcels are extinguished easements under Iowa Code § 327G.76.

*See* Iowa Code § 327G.77(1) (stating that where rail road easement rights extinguish, "the

property shall pass to the owners of the *adjacent* property at the time of abandonment")

(emphasis added).

> C.    The United States is entitled to summary judgment on those claimants whose
> properties adjoin segments of the rail corridor Union Pacific owned in fee.

The Supreme Court and the Federal Circuit have held that a NITU does not amount to

taking of property where the railroad held a fee simple absolute property interest.  *Preseault*, 100

F.3d at 1533.  Some of the deeds to Union Pacific's predecessors-in-interest recited reverter

clauses.  *See, e.g.*, U.S. Proposed Findings ¶ 29, Ex. 29.  Iowa enacted a stale-uses statute that

required the owners of reversionary rights to record verified claims with the relevant county

recorder by July 5, 1966.  *McKinley*, 368 N.W.2d at 138 (citing Iowa Code § 614.24).  Any

reversionary rights that were not identified in a verified claim that was recorded by July 5, 1966,

extinguished.  *Id.*, *cited in Lowers*, 663 N.W.2d at 412.  Here, no Plaintiffs proffer evidence that

their predecessors-in-interest recorded a verified claim.  Hence, any fee conveyances to Union

Pacific's predecessors-in-interest are now conveyances in fee simple absolute.  *See Lowers*, 663

N.W.2d at 412 (holding that section 614.24 of the Iowa Code "operated to vest fee simple

absolute ownership in the railroad company in 1966").

There are three categories of claimants whose claims fail because Union Pacific owned

the abutting segment of the rail corridor in fee.  First, there are claimants who stipulated that

Union Pacific owned in fee the segment of the rail corridor adjoining their properties.  Second,

there are claimants who stipulated that certain deeds applied to the segments of the rail corridor

abutting their properties, but did not stipulate that these deeds conveyed a fee interest.  The

United States demonstrates below, *infra* Part V.C.2, tha these stipulated deeds conveyed fee title

to the railroad company.  Third, there are claimants who did not stipulate that deeds applied to their properties at all.  The United States demonstrates below, *infra* Part V.C.3, that certain deeds apply to these parties' properties and that those deeds conveyed a fee interest to Union Pacific's predecessors-in-interest.

1. <u>Plaintiffs have stipulated that some of the claimants' properties adjoin segments of the rail corridor that Union Pacific held in fee.</u>

In the parties' August 23, 2010, joint status report, Plaintiffs stipulated that the following claimants' base their claims on segments of the rail corridor that Union Pacific owned in fee.

| Claimant Identifier on Class Index | Claimant Name |
|---|---|
| 1 | Michael and Angie Harper |
| 2 | Verlene M. Murray |
| 3 | Franklin County c/o Michelle Giddings, Auditor |
| 12.A | Larry (deceased) and Mary Jo Towne |
| 12.B | Larry (deceased) and Mary Jo Towne |
| 13 | Dawn (McClennan) Creighton |
| 14 | Larry D. Butt |

Jt. Status Rep. (D.E. 48), Ex. 1.  Because Union Pacific owned the segments of the rail corridor adjoining these claimants' properties in fee, the United States is entitled to summary judgment as to these claimants.  *Preseault*, 100 F.3d at 1533.

2. <u>The United States is entitled to summary judgment on those claims where the stipulated deed relevant the adjoining segments of the rail corridor conveyed a fee interest to the railroad.</u>

Other claimants base their takings claims on their ownership of segments of the rail corridor that Union Pacific owned in fee, although Plaintiffs did not stipulate that Union Pacific owned the adjoining segments of the rail corridor in fee.  Nevertheless, Plaintiffs stipulated that specific railroad deeds applied to the segments of the rail corridor adjoining their properties.  Jt. Status Report (D.E. 48) Ex. 1.  Under Iowa law, these deeds conveyed a fee interest to the railroad company.

13

The Iowa Supreme Court, in answering questions certified to it by the United States District Court for the Southern District of Iowa in a rails-to-trails case, established the criteria by which railroad deeds are construed either as fee conveyances or as easements. *Lowers*, 663 N.W.2d at 409-411. *Lowers* held that deeds to railroads that "grant[] a specified tract of land without limitation or qualification" convey fee and not an easement. *Id.* at 411. This was so even though the deed at issue in *Lowers* was titled "Rt. of Way Deed." *Id.* To establish an easement, "there must be some reference to right-of-way in the language defining the interest being conveyed." *Id.*

The claimants and railroad deeds that fall under this category are identified in the attached Appendix B. The deeds listed in Appendix B recite the following granting clauses:

| Source Deed | Produced as Ex. to U.S. Proposed Findings | Granting Clause |
|---|---|---|
| Book Q, Page 461 | 37 | "Now therefore, in compliance with the terms of said ordinance and by virtue of the authority therein granted, the said town of Bristow, Butler County, Iowa, hereby sells, conveys and quit claims, to [the railroad company], and its successors, all right, title and interest in the real estate embraced within the limits of the public road or highway, so vacated." |
| Book T, Page 393 | 29 | Grantor "have [sic] sold, and by these premises do [sic] convey unto said [railroad company] the following lands for depot grounds, to-wit: [legal description]." |
| Book U, Page 57 | 24 | Grantors "SELL AND CONVEY unto [railroad company] the following described premises situated in Franklin County and State of Iowa, to wit: [legal description]." |
| Book 53, Page 307 | 31 | Grantors "do hereby sell and convey unto [the railroad company] and to its successors and assigns, the following described premises, situated in the County of Butler and State of Iowa, to-wit: [legal description]." |
| Book 53, Page 345 | 33 | Grantors "do hereby Grant, Bargain, Sell and Convey unto [the railroad company], its successors and assigns forever, all those tracts or parcels of land lying and being in the County of Butler and State of Iowa, described as |
| Book 53, Page 346 | 55 | |
| Book 53, Page 347 | 35 | |
| Book 53, Page 348 | 34 | |

| Source Deed | Produced as Ex. to U.S. Proposed Findings | Granting Clause |
|---|---|---|
| Book 53, Page 349 | 32 | follows, to-wit: [legal description]."[7] |
| Book 53, Page 351 | 56 | |
| Book 53, Page 399 | 27 | |
| Book 53, Page 424 | 30 | |
| Book 54, Page 411 | 60 | Grantors "do hereby SELL AND CONVEY unto [the |
| Book 54, Page 427 | 36 | railroad company] the following described premises, |
| Book 54, Page 515 | 66 | situated in Butler County, Iowa: [legal description]." |

Because the above-listed deeds convey land and do not make "some reference to right-of-way in the language defining the interest being conveyed," *Lowers,* 663 N.W.2d at 411, they convey a fee interest to Union Pacific's predecessors-in-interest, *id.* And because Plaintiffs cannot show that their predecessors-in-interest recorded any verifications of reversionary rights by July 4, 1966, Union Pacific held the land described in these deeds in absolute fee. *Id.* at 412 (citing and discussing Iowa Code § 614.24).

There is a distinction that must be made between the two categories of deeds identified in Appendix B and the above table. There are portions of the rail corridor that remain in the same location as when they were first created. Other portions of the rail corridor were relocated, with the railroad company securing additional property necessary for the relocation of the corridor. All the deeds fall in the former category, except the deeds recorded in Books 53 and 54. Thus, as to the former category, the United States is entitled to summary judgment because Union Pacific owned the entire relevant segment of the rail corridor in fee. *Preseault*, 100 F.3d at 1533.

The latter category of deeds—i.e., those recorded in Books 53 and 54—relate to a relocation of the rail corridor to the south. The relocation deeds recorded in Books 53 and 54 conveyed fee to the new, southerly portion of the relocated rail corridor. To the extent that the

---

[7]    These deeds have minor differences in capitalization and placement of commas, etc.

relocated rail corridor overlapped with the original rail corridor, the overlapped portion continued to be used pursuant to the original easements.  The new portion of the relocated rail corridor was operated under the fee conveyances recorded in Books 53 and 54.  Thus, the United States is entitled to summary judgment as those parcels (and associated claimants) identified in Appendix B that adjoin segments of the rail corridor that the above-listed deeds describe (i.e., parcels to the south of the relocated rail corridor).  *Preseault*, 100 F.3d at 1533.  Based on the mapping Plaintiffs' provided, these southerly parcels appear to include claim book tabs 49.A, 51, 54.A, 54.B, 57.A, 57.B, and 57.C, as well as parts of 37.B and 49.C.  As to the claimants on the other side of the relocated rail corridor (i.e., parcels to the north of the relocated rail corridor), the United States' liability turns on whether this Court construes the original easements that pertain to the legacy portion of the relocated line either as unlimited easements or as easements for railroad purposes only.  *See, infra* Parts V.D,C.  If the easements are construed as being for railroad purposes only, the United States' liability to the adjoining, northerly landowner would be to the center line of the legacy easement segment.  Iowa Code § 327G.77.  This is because Union Pacific owns in fee the land lying on the other side of the easement portion of the rail corridor pursuant to the deeds recorded in Books 53 and 54.  Again, based on Plaintiffs' mapping, these northerly parcels appear to be those associated with Plaintiffs' claim book tabs 52, 53.A, 55.A, 55.B, 56, 70, 71.A, as well as parts of 37.B and 49.C.

      3.      <u>The United States is entitled to summary judgment as to those claimants who adjoin segments of the rail corridor that Union Pacific held in fee based on deeds that were not identified in the parties' stipulations</u>.

There are four deeds not identified in the parties' August 23, 2010, stipulation chart that relate to nine parcels and that conveyed a fee interest in the relevant segments of the rail corridor to Union Pacific's predecessors-in-interest.  The relevant parcels are identified in the attached Appendix C.

16

The first deed, recorded at Book U, Page 527 of the records of the Franklin County Recorder (UP Deed No. 3150), applies to "the Sourthern part of the North West [quarter] of the South West [quarter] of section 27." U.S. Proposed Findings ¶ 25, Ex. 25. The granting clause of this deed states that the grantors "do hereby SELL AND CONVEY unto [the railroad company], the following described premises, situated in Franklin County, and State of Iowa, to-wit: [recites legal description]." *Id.* This granting clause conveys a fee interest to the railroad under Iowa law. *Lowers*, 663 N.W.2d at 411. Further, this deed applies to the parcels associated with tabs 15 and 16 of Plaintiffs' claim book. Those parcels lie in the V.F.W. Addition to Hampton, Iowa. U.S. Proposed Findings ¶¶ 21, 22, Exs. 21, 22. The V.F.W. Addition to Hampton is located in the northern portion of the southwest quarter of the southwest quarter of section 27. *Id.* ¶ 23, Ex. 23. Hence, the V.F.W. Addition (and the lots contained therein) adjoins the segment of the rail corridor described in Book U, Page 527 on the east-west centerline of the southwest quarter of section 27.

The second deed, recorded at Book U, Page 351 of the records of the Franklin County Recorder (UP Deed No. 6927), applies to the depot grounds at Hansell, located in the northeast quarter of section 29 and in the northwest quarter of section 28 off the common section line that divides the two sections. U.S. Proposed Findings ¶ 39, Ex. 39. The granting clause of this deed states that the grantors "do hereby sell and convey unto [the railroad company], the following described premises, situated in Franklin County, and State of Iowa, to-wit: [recites legal description]." *Id.* This granting clause conveys a fee interest to the railroad under Iowa law. *Lowers*, 663 N.W.2d at 411. Further, this deed applies to the parcels associated with tabs 22.D,[8]

---

[8]     The entire parcel associated with tab 22.D of Plaintiffs' claim book does not adjoin segments of the rail corridor pertaining to Book U, Page 351. It appears that the deed affects approximately the easterly 100 feet of this parcel. *Compare* U.S. Proposed Findings ¶ 76, Ex. 76

23, 24.A, 25.A and 26.A of Plaintiffs' claim book.  These parcels lie within the first 800 feet of

the northwest quarter of section 28 or the first 700 feet of the northeast quarter of section 29, off

the common section line dividing section 28 and 29.  U.S. Proposed Findings ¶¶ 16, 17, 18, 19,

20, Exs. 16, 17, 18, 19, 20.

The third and fourth deeds, recorded at Book T, Page 393 and Book 38, Page 284 (UP

Deed No. 6902), apply to the northeastern quarter of section 28.  U.S. Proposed Findings ¶¶ 29,

26 Exs. 29, 26.  The granting clause of the former deed states that the grantors "have sold and by

these presents convey unto [the railroad company] the following land for depot grounds, to-wit:

[recites legal description]."  *Id.* ¶ 29, Ex. 29.  The granting clause of the latter deed states that the

grantors "do hereby remise, release and forever Quit Claim unto [the railroad company] all that

track or parcel of land described as follows, to-wit: [recites legal description]."  *Id.* ¶ 26, Ex. 26

These granting clauses convey fee interests under Iowa law.  *Lowers*, 663 N.W.2d at 411.

Further, these deeds apply to the parcels associated with tabs 39.A, 39.B, and 40 of Plaintiffs'

claim book.  Each of these parcels lies within the first 1,500 feet of the rail corridor in the

northeast quarter of section 28, east of the centerline of section 28.  U.S. Proposed Findings ¶¶

67, 68, 69, Exs. 67, 68, 69.

     D.    <u>The United States is entitled to summary judgment as to the Iowa Pacific right-of-
way deeds because those deeds are not limited to railroad purposes only</u>.

The second step of analyzing takings claims under the Trails Act requires this Court to

determine whether, under Iowa law, trail use falls within the scope of the relevant railroad

easements.  *Ellamae Phillips*, 564 F.3d at 1373.  Plaintiffs' lawsuit presents two general

categories of easements.  The first category involves easements to Iowa Pacific that do not recite

---

(describing parcel as lying in northeast quarter of section 29, except the easterly 700 feet), *with
id.* ¶ 39, Ex. 39 (describing land affected as being the first 800 feet in section 29 lying west of the
easterly section line of section 29).

express limitations for railroad purposes only.  *Infra* Part D.1.  The claimants whose properties adjoin segments of the rail corridor subject to such unlimited easements are identified in Appendix D.

Plaintiffs assert that the Iowa Pacific easements are for railroad purposes only based on a number of Iowa court decisions that construed certain deeded railroad easements as limited to railroad purposes only.  Pls.' Memo. (D.E. 51) at 26-29.  But the easement deeds relevant to those court decisions recited (1) specific limitations on the use of the easement or (2) reverters in the event of permanent non-user as a railroad.  *See infra* Part D.2.  The Iowa Pacific right-of-way deeds at issue here contain no such specific limitations or reverters.

Having incorrectly concluded that the Iowa Pacific right-of-way deeds are easements limited to railroad purposes only, Plaintiffs primarily rely on the Iowa Supreme Court's decision in *McKinley*, 368 N.W.2d at 134-35, in arguing that trail use falls outside the scope of the Iowa easements.  Pls.' Memo. (D.E. 51) at 25-26.  But *McKinley* involved a condemned railroad easement and distinguished condemned railroad easements from deeded easements that were not for railroad purposes only.  *See infra* Part D.3.

    1.    <u>The Iowa Pacific right-of-way deeds are not expressly limited to railroad purposes only and trail use falls within the scope of the easements those deeds convey</u>.

Under Iowa law, there are three reasons the Iowa Pacific right-of-way deeds provided general easements not limited only to railroad purposes.  First, there is no express limitation recited in the Iowa Pacific right-of-way deeds that limits the deeds to railroad purposes only.  The recital in the Iowa Pacific deeds that the right of way was conveyed to Iowa Pacific "for their Railroad" and "for that purpose" does not limit the easements to railroad purposes only under Iowa law.  Consequently, the Iowa Pacific right-of-way deeds are unlimited easements.  Second, trail use falls within the scope of these unlimited easements under Iowa law.  Third, the

Iowa Supreme Court's opinion in *McKinley* supports the conclusion that trail use falls within the scope of the Iowa Pacific right-of-way deeds.

The Iowa Pacific right-of-way deeds are not limited to railroad purposes only even though those deeds state that the grantors conveyed to Iowa Pacific "the right of way for their Railroad" and "for that purpose." *See, e.g.,* U.S. Proposed Findings ¶ 59, Ex. 59. A deeded right-of-way "may be used for any purpose to which the land accommodated thereby may reasonably be devoted unless the grant contains specific limitations . . . ." *McDonnel v. Sheets*, 15 N.W.2d 252, 255 (Iowa 1944). *McDonnel* involved a deeded grant of "the privilege of ingress and [egress] to the rear of [grantee's] property, with team and wagon . . . ." *Id.* at 253, 255. The Iowa Supreme Court held that the reference to "team and wagon" did not limit the type of vehicle that could traverse the right-of-way. *Id.* at 255 (describing the grant of easement as "unlimited"). If the clause "with team and wagon" did not constitute a "specific limitation" under Iowa law, then the phrases "for their Railroad" and "for that purpose" do not limit the Iowa Pacific right-of-way deeds to active rail service. *See also Wiegmann v. Baeier*, 203 N.W.2d 204, 208-09 (Iowa 1972) (holding that the phrase "in the same manner as the [easement] has been heretofore used" were "words of description and not of limitation").

Indeed, the Iowa Supreme Court rejected the notion that a deed conveying property to a railroad "for the construction of said Railroad in said Cass County" should be construed based on the railroad's intended use. *Lowers*, 663 N.W.2d at 410. *Lowers* reasoned that "[d]etermining the nature of the interest conveyed by reference to the intended use by the grantee seems frivolous in matters involving narrow tracts of land acquired by railroad companies." *Id.* The grantors to the Iowa Pacific right-of-way deeds could have inserted limitations in their deeds that would have limited the railroad easement to railroad purposes only. *See, infra* Part V.D.2

(discussing examples of deeded railroad easements with express limitations recited in the deeds). They did not do so.

With respect to general easements under Iowa law, "mere non-user does not work an abandonment of an easement created by specific grant or reservation." *Schwartz v. Grossman*, 173 N.W.2d 57, 60 (Iowa 1969).[9]  In addition, trail use falls within the scope of the Iowa Pacific right-of-way deeds, because (1) trail use is not more burdensome on the servient estate than rail service, and (2) trail use, like rail use, furthers the easement purpose as a passage way.  A party's use of an easement must not place a greater burden on the servient estate than was contemplated at the time of the formation of the easement.  *Keokuk Junction Ry. Co. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000).  The burden associated with a railroad easement is substantial. *See W. Union Tel. v. Pa. R.R. Co.*, 195 U.S. 540, 570 (1904).  The United States submits that the Iowa courts would agree with the courts of Maryland, Pennsylvania and others and hold that "[b]ikers and walkers, even in large groups, simply cannot be said to be more burdensome than locomotive engines pulling truck-sized rail cars through the corridor."  *Chevy Chase*, 733 A.2d at 1078.  *See also Moody v. Allegheny Valley Land Trust*, 976 A.2d 484, 666 (Pa. 2009) ("Subsequent holders of the easement may not transgress its boundaries, but they do not transgress the use for which it was granted when they use it for hiking and biking.").  *But see Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004) (applying California law and holding that "it appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains"); *Preseault*, 100 F.3d at 1542

---

[9]     This rule does not apply to easements for railroad purposes only.  *See infra* Part V.E (discussing Iowa Code §§ 327G.76 and 327G.77).

(applying Vermont law and holding "[a]lthough a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different").

Notably, the Iowa Supreme Court held that the use of a public street includes the right to construct and operate a railway on that street, reasoning that "the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but rather a new and improved method of using the same, germain [sic] to their [sic] principal object, as a passage-way." *Milburn*, 12 Iowa 246, 1861 WL 248, at *8 (Iowa Oct. 17, 1861). If a railway is a permissible use of a public street on the basis that both have the principal purpose of being a passage way, then a railway can embrace trail use for that same reason. *See Wash. Wildlife Preservation v. States*, 329 N.W.2d 543, 547 (Minn. 1983) ("Recreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates."), *quoted in McKinley*, 368 N.W.2d at 135; *accord Chevy Chase*, 733 A.2d at 1074-77.

Finally, the Iowa Supreme Court's analysis in *McKinley* supports the conclusion that trail use falls within the scope of the Iowa Pacific right-of-way deeds. If, as Plaintiffs argue, Iowa law is clear that trail use *never* falls within the scope of any easements to railroad companies, Pls.' Memo. (D.E. 51) at Part VI.A.ii, the Iowa Supreme Court could have so held in *McKinley*. But it did not. Instead, the Iowa Supreme Court quoted the Minnesota Supreme Court's reason for finding that trail use fell within the scope of certain deeded railroad easements and then distinguished that case on grounds unrelated to the merit of the Minnesota Supreme Court's holding. *McKinley*, 368 N.W.2d at 135 (distinguishing *Washington Wildlife* on the basis that it involved deeded railroad easements and not condemned railroad easements). Given its basis for distinguishing the Minnesota Supreme Court's holding, it is reasonable to conclude that the Iowa

22

Supreme Court similarly agreed that trail use may fall within the scope of a deeded railroad

easement.  *Id.* at 135 (explaining that a right-of-way deed "is in essence a contract").  Like the

deeds at issue in *Washington Wildlife*, the Iowa Pacific right-of-way deeds at issue here do not

"expressly limit the easement to railroad purposes, provide that the interest conveyed terminates

if use for railroad purposes ceases, or provide that the easement would exist only for so long as

the right-of-way was used for railroad purposes."  *Wash. Wildlife*, 329 N.W.2d at 546.  Because

the Iowa Pacific right-of-way deeds are like the deeds at issue in the Minnesota case and do not

recite specific limitations on the use of the easement, trail use falls within the scope of the Iowa

Pacific right-of-way deeds.  *Id.*, *quoted in McKinley*, 368 N.W.2d at 135; *McDonnel*, 15 N.W.2d

at 255.

> 2.   <u>The authorities Plaintiffs cite to support their argument that the Iowa Pacific right-of-way deeds are limited to railroad purposes only recite limiting language that cannot be found in the Iowa Pacific right-of-way deeds</u>.

Plaintiffs cite five cases in support of their argument that trail use does not fall within the

scope of the easements conveyed through the Iowa Pacific right-of-way deeds: (1) *Hawk v. Rice*,

325 N.W.2d 97 (Iowa 1982); (2) *Haack v. Burlington N., Inc.*, 309 N.W.2d 147 (Iowa App.

1981); (3) *Johnson v. Burlington N., Inc.*, 294 N.W.2d 63 (Iowa App. 1980); (4) *Estate of*

*Rockafellow v. Lihs*, 494 N.W.2d 734 (Iowa App. 1992); and (5) *McGrane v. Maloney*, 770

N.W.2d 851, No. 08-1502, 2009 WL 92048 (Iowa App. Apr. 8, 2009) (unpublished).  Pls.'

Memo. (D.E. 51) at 20, 28-29.  The first case, *Hawk*, is inapposite to the scope of easement issue.

The other four cases do not support Plaintiffs' argument because the deeds at issue in those cases

recite specific limitations not found in the relevant Iowa Pacific right-of-way deeds.

Plaintiffs' reliance on *Hawk* is misplaced because *Hawk* does not analyze the scope of

deeded railroad easements.  Instead, *Hawk* evaluates "whether a deed of right of way for a

railroad conveyed a determinable fee or an easement." 325 N.W.2d at 98. This is a "first step"

title issue under the rails-to-trails takings analysis. *Ellamae Phillips*, 564 F.3d at 1373. The

parties in this case already stipulated that the Iowa Pacific right-of-way deeds conveyed

easements. Jt. Status Report (D.E. 48), Ex. 1. Thus, *Hawk* analyzes and resolves a title issue

that is not disputed for purposes of Plaintiffs' partial motion for summary judgment. In addition,

the deed in *Hawk* recited a reverter clause should the rail operator not construct a rail line, cease

using the rail line, or relocate the line. 325 N.W.2d at 98. Yet a reverter was not included in the

Iowa Pacific right-of-way deeds. *See, e.g.,* U.S. Proposed Findings ¶ 59, Ex. 59. *See also*

*Wash.Wildlife*, 329 N.W.2d at 546 (noting that the deeds at issue did not "provide that the

interest conveyed terminates if use for railroad purposes ceases, or provide that the easement

would exist only for so long as the right-of-way was used for railroad purposes").

Plaintiffs' reliance on *Haack* and *Johnson* is unavailing because the language recited in

the deeds at issue in those cases specifically limits the permissible scope of the conveyed

easements. In *Haack*, "[t]he deed under which [the railroad] had right to the property in question

stated that the conveyance was 'for said railroad *and for railroad purposes only*.'" 309 N.W.2d

at 150 (emphasis added). And the deed at issue in *Johnson* conveyed an easement "for said

railroad *and for railroad purposes only* . . . ." 294 N.W.2d at 64 (emphasis added). The Iowa

Pacific right-of-way deeds relevant to Plaintiffs' instant motion do not recite these limitations.

*McGrane* is similarly inapplicable, because the deed at issue in *McGrane* authorized use

of an access easement "'for all lawful purposes connected with the use and enjoyment of said

premises of the second party as farm land, *but for no other purposes*.'" 770 N.W.2d 851, 2009

WL 929048, at *1 (emphasis added). Again, the Iowa Pacific right-of-way deeds do not state

24

that the easement was for "no other purposes" than rail service.  *See, e.g.,* U.S. Proposed Findings ¶ 59, Ex. 59.

Plaintiffs' reliance on *Rockafellow*, Pls.' Memo (D.E. 51) at 26-27, is also misplaced. The deeded railroad easement at issue in *Rockafellow* included a reverter clause that was triggered "if said railway company or their assigns shall at any time hereafter cease permanently to use said road and the same shall at any time be abandoned or the route thereof be changed so as to not be continued over the said premises."  494 N.W.2d at 735.  There is no similar reverter clause in the Iowa Pacific right-of-way deeds relevant to Plaintiffs' motion.  *See, e.g.,* U.S. Proposed Findings ¶ 59, Ex. 59.  Again, the absence of such a reverter renders the Iowa Pacific deeds more like the deeds at issue in *Washington Wildlife*.  329 N.W.2d at 546.

In sum, the grantors in the Iowa Pacific right-of-way deeds could have included the express limitations found in *Haack*, *Johnson*, and *McGrane*, or the reverter upon permanent abandonment found in *Rockafellow*.  But the grantors to Iowa Pacific did not do so.  Instead, the Iowa Pacific right-of-way deeds—like the deeds at issue in *Washington Wildlife*—do not "expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes."  *Wash. Wildlife*, 329 N.W.2d at 546, *quoted in McKinley*, 368 N.W.2d at 135.

>    3.   The Iowa Supreme Court's holding that trail use falls outside the scope of condemned railroad easements cannot be applied to the Iowa Pacific right-of-way deeds.

The Iowa Supreme Court held in *McKinley* that recreational trail use exceeds the scope of a railroad easement obtained through condemnation.  368 N.W.2d at 134-35.  Plaintiffs erroneously attempt to extend the holding of *McKinley* to the Iowa Pacific right-of-way deeds. But *McKinley* expressly limited itself to condemned easements.

*McKinley* cannot be extended to the Iowa Pacific right-of-way deeds relevant to Plaintiffs' motion.  In holding that recreational trail use exceeds the scope of condemned railroad easements under Iowa law, the Iowa Supreme Court distinguished the Minnesota Supreme Court's decision in *Washington Wildlife*.  *McKinley*, 368 N.W.2d at 135.  *Washington Wildlife* held that recreational trail use fell within the scope of certain deeded railroad easements, because none of those railroad deeds "expressly limit[ed] the easement to railroad purposes, provide[d] that the interest conveyed terminates if use for railroad purposes ceases or provide[d] that the easement would exist only for so long as the right-of-way was used for railroad purposes."  329 N.W.2d at 545-46, *cited in Preseault*, 494 U.S. at 16 n.9.  The Iowa Supreme Court quoted and did not dispute *Washington Wildlife's* observations that "'the holder of an easement is not limited to the particular method of use in vogue when the easement was acquired'" and "'other methods of use in aid of the *general purpose* for which the easement was acquired are permissible.'" *McKinley*, 368 N.W.2d at 135 (quoting *Wash. Wildlife*, 329 N.W.2d at 546) (emphasis in original).  But *McKinley* distinguished *Washington Wildlife* on the ground that the easement at issue in *McKinley* "was created by condemnation, a statutory creature, and not by deed, which is in essence a contract."  *McKinley*, 368 N.W.2d at 135; *see Thompson v. City of Osage*, 421 N.W.2d 529, 532 (Iowa 1988) (holding that "a condemner takes only the estate or interest in the property condemned that is necessary for the purpose of condemnation").  Accordingly, *McKinley* does not establish that trail use falls outside the scope of the Iowa Pacific right-of-way deeds because *McKinley* limited its holding to condemned easements.

E.   <u>The United States does not object to the entry of summary judgment that the Trails Act preempts abandonment of railroad easements that are limited to railroad purposes under Iowa law and that the United States is, therefore, liable for a taking of an easement over affected segments of the rail corridor for railroad purposes.</u>

The issues discussed above deal with title disputes or the scope of certain deeded easements based on the language recited in those deeds.  These issues do not account for all of the claimants in this lawsuit.  The remaining claimants, identified in Appendix E to this brief, own parcels of property adjoining segments of the rail corridor that Union Pacific operated by easement obtained (1) through condemnation or (2) through deed limited to railroad purposes only.

As to this final category of properties, the United States is liable for a Fifth Amendment taking under the Trails Act where "state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting."  *Caldwell*, 391 F.3d at 1233 (citing *Preseault*, 100 F.3d at 1522, *and Toews*, 376 F.3d at 1376).

"Through the years, Iowa has adopted different statutes dealing with conflicting rights in abandoned railroad property."  *Notelzah, Inc. v. Destival*, 489 N.W.2d 744, 747 (Iowa 1992).  For purposes of Plaintiffs' lawsuit, the operative statute stated in pertinent part that "[r]ailroad property rights which are extinguished upon cessation of service by the railroad divest when the department of transportation or the railroad, having obtained authority to abandon the rail line, removes the track materials to the right-of-way."  Iowa Code § 327G.76 (2003).  Once railroad easements extinguish under section 327G.76, title to the former rail corridor vests in the landowners of the parcels that adjoin the corridor.  Iowa Code § 327G.77 (2003); *Macerich*, 433 N.W.2d at 730.[10]

---

[10]   "The statutory revisionary provisions [of Iowa Code §§ 327G.76 and 327G.77] are inapplicable when a railroad has acquired a fee simple in the right-of-way."  *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 89 (Iowa App. 1994).

27

In *Macerich*, the Iowa Supreme Court held that section 327G.76 extinguishes railroad easements upon cessation of service.  433 N.W.2d at 729.  In so holding, *Macerich* concluded that a railroad easement was extinguished sometime *before* the Interstate Commerce Commission ordered abandonment.  *Id.* at 730, *discussed in Burlington N.R.R. Co. v. Kmezich*, 48 F.3d 1047, 1050 (8th Cir. 1995).  The United States notes that *Macerich* writes out the phrase "authority to abandon the rail line" as an element of extinguishment under section 327G.76, in contravention of standard rules of statutory construction.  *Compare Macerich*, 433 N.W.2d at 729 (omitting from its quotation of section 327G.76 the phrase "having obtained authority to abandon the rail line" and holding that section 327G.76 extinguishes railroad easements absent an order of abandonment), *with Iowa v. Ahitow*, 544 N.W.2d 270, 273 (Iowa 1996) (stating that Iowa courts do not interpret statutes so as to render any portion irrelevant).  Nevertheless, based on the accrual of their cause of action set forth in *Caldwell*, 391 F.3d at 1235, the United States recognizes that the Trails Act preempts abandonment of the easements for railroad purposes only that would otherwise occur under section 327G.76 of the Iowa Code (as construed in *Macerich*).

The easement taken under the Trails Act is one for railroad purposes only.  The easement is not one for recreational trail use.  This distinction flows from the plain language of the Trails Act and the Federal Circuit's recent decisions in rails-to-trails cases.

       1.    <u>The easement taken is for railroad purposes and does not include trail use.</u>

To prevail on their takings claim, Plaintiffs must make a showing of causation between the government action and the alleged deprivation.  *Moden v. United States*, 404 F.3d 1335, 1343 (Fed. Cir. 2005).  The government action at issue in this case is the Surface Transportation Board's issuance of the NITU.  *Caldwell*, 391 F.3d at 1233-34 ("The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.")

(emphasis in original).  That action does not mandate trail use, it merely preserves the railroad easement by preempting abandonment of that rail corridor.

The plain language of 16 U.S.C. § 1247(d) establishes (1) that the Trail Act preempts the abandonment of a railroad right-of-way that would be triggered through an incompatible interim use, but (2) that the Trails Act does not purport to give an interim user authority to maintain any specific interim use.  More specifically, the Trails Act states: "[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  16 U.S.C. § 1247(d).   This provision does not state that the Trails Act authorizes any specific type of interim use, nor does it expand the scope of the railroad right-of-way; the provision merely states that any interim use cannot be deemed "an abandonment of the use of [the railroad] rights-of-way *for railroad purposes.*"  *Id.* (emphasis added); *Illig v. United States*, 58 Fed. Cl. 619, 631 (2003) ("What was imposed on plaintiffs' land was a new easement which purported to preserve railroad use.").  To underscore this point, the Trails Act assigns to the interim user the obligation "to assume full responsibility for management of such rights-of-way *and for any legal liability arising out of such transfer or use.*"  16 U.S.C. § 1247(d) (emphasis added).  Thus it is the interim user, and not the United States, who assumes responsibility for any legal liability arising from the specific interim use employed; the Trails Act merely insures that whatever interim use is employed, that interim use cannot result in the abandonment of the right-of-way "*for railroad purposes.*"  16 U.S.C. § 1247(d).

The NITU does not authorize an interim use beyond the scope of underlying easements because the Surface Transportation Board does not "analyze, approve, or set the terms for the interim trails use arrangement." *Policy Statement on Rails to Trails Conversions*, 1990 WL 287255, at *3 (Surface Transp. Bd. Jan. 29, 1990); *Union Pacific R.R. Co. Abandonment Exemption in Cerro Gordo Cnty., IA*, 2005 WL 835611, at *3 (Surface Trasnp. Bd. Apr. 12, 2005) ("The Board has no involvement in the negotiations and does not analyze, approve, or set the terms of trail use agreements. The Board is not authorized to regulate activities over the actual trail."); *Goos v. Interstate Commerce Comm'n.*, 911 F.2d 1283, 1295 (8th Cir. 1990) (noting the Surface Transportation Board's position that it has "no power to compel a conversion between unwilling parties, and, conversely, no discretion to refuse one if voluntarily negotiated"). In this case, the Surface Transportation Board issued a NITU because the requirements of the Trails Act regarding financial responsibilities and railbanking were met. U.S. Proposed Findings ¶ 1, Ex. 1 at 3. In doing so, the Board does not purport to authorize any use inconsistent with the original railroad grant. Nor does the Board manage any interim trail on the corridor. *See Idaho N. & Pac. R.R. Co.*, 3 S.T.B. 50, 1998 WL 146208, at *7 (Surface Transp. Bd. Mar. 20, 1998) ("[T]he Trails Act does not require the trail to be 'developed' in any particular way"). The Surface Transportation Board's "chief concern, once a trail condition has been imposed, is that the statutory railbanking condition not be compromised, and that nothing occur that would preclude a railroad's right to reassert control over the right-of-way at some future time to revive active service." *Id.*. Hence, the Surface Transportation Board cannot be held to have intended to impose an interim use that exceeds the scope of permissible uses under Iowa law.

2. Federal Circuit opinions addressing accrual of rails-to-trails taking claims underscore that the United States does not authorize non-conforming interim uses of rail corridors.

Federal Circuit decisions regarding the accrual of takings claims under the Trails Act confirms that the United States preserves railroad corridors for railroad purposes and does not impose an easement for recreational trail use. *Caldwell* held that the taking occurs, if at all, "when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." 391 F.3d at 1235. *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed.Cir. 2006), held that the Trails Act exposes the United States to potential takings liability by "prevent[ing] abandonment of the corridor and [] preclude[ing] the vesting of state law reversionary interests in the right of way." And *Ladd v. United States*, 630 F.3d 1015, 1024 (Fed. Cir. 2010), held that events arising after issuance of the NITU, including the conversion of a rail corridor to a recreational trail, cannot be elements of a taking claim under the Trails Act. These cases establish that Trails Act takings claims against the United States accrue when "railroad abandonment proceedings are suspended by the STB's issuance of a NITU," *Barclay*, 443 F.3d at 1371, not when some use inconsistent with the original railroad grant begins. *See also id.* at 1374 ("The barrier to reversion is the NITU, not physical ouster from possession."), *quoted in Ladd*, 630 F.3d at 1023.

As the Federal Circuit observed, the Surface Transportation Board issues its NITU before an interim use agreement is reached. *Caldwell*, 391 F.3d at 1233-34; *Ladd,* 630 F.3d at 1023-24. The issuance of the NITU is the only government action at issue that could give rise to a takings claim. *Caldwell*, at 391 F.3d at 1233-34, *cited in Barclay*, 443 F.3d at 1373, *and Ladd*, 630 F.3d at 1020. Plaintiffs must prove that the elements of their takings claims exist as of the time the NITU is issued. *Ladd,* 630 F.3d at 1024. Here, no specific interim use was finalized at the time the NITU was issued on September 23, 2003—there was only the possibility of a future

31

agreement that would involve interim trail use, but with respect to which the Surface Transportation Board had no control or involvement.  *See* Pls.' Proposed Findings (D.E. 56) ¶ 102, Ex. 71 at 5 (¶ 6).  Accordingly, the United States can only be liable for a taking of an easement for railroad purposes.

        3.    <u>The Federal Circuit's decisions in *Preseault* and *Towes* do not require a finding that the Surface Transportation Board authorized a non-conforming use in this case.</u>

The United States' argument that neither the Trails Act nor the NITU issued in this case authorizes any specific interim use, including trail use, is not inconsistent with the Federal Circuit's rejection of the United States' argument in *Preseault* that "since it was the City that actually established the trail, the United States should not be considered the responsible actor." 100 F.3d at 1551.  *See also Toews*, 376 F.3d at 1381.  The situations evaluated in *Preseault* and *Toews* are distinguishable.

In *Preseault*, "[b]oth the State and the Federal Governments were fully invested in the effort to create this public trail."  100 F.3d at 1551.  *Preseault* concluded that "when the Federal Government puts into play a series of events which result in a taking of private property, the fact that the Government acts through a state agent does not absolve it from the responsibility, and the consequences, of its actions."  *Id.*, *quoted in Toews*, 376 F.3d at 1381-83.  That conclusion cannot be reached here, because Plaintiff cannot present evidence that the United States, or some agent of the United States, was "fully invested in the effort to create this public trail," as was the case in *Preseault*, 100 F.3d at 1551.

In rejecting the United States' argument that it is the third-party trail sponsor and not the United States that is responsible for trail use, *Preseault* and *Toews* relied upon *Hendler v. United States*, 952 F.2d 1364, 1378-79 (Fed. Cir. 1991).  *Preseault,* 100 F.3d at 1551; *Toews*, 376 F.3d at 1381-82.  *Hendler* held the United States responsible for state actions because the state and the

federal government entered into a formal cooperative agreement and an EPA order specifically directed plaintiffs to provide access to "EPA officials and other authorized personnel, including state officials."  952 F.2d at 1379; *id.* at 1378 (holding that the "activities of EPA and of California were two coordinate and coordinated parts of the same undertaking"); *see Hendler v. United States*, 11 Cl. Ct. 91, 93 (1986), *aff'd in part and rvs'd in part,* 952 F.2d 1364 (quoting the access order, which ordered plaintiffs "not to interfere in any manner with EPA State activity" on plaintiffs' property).  No such coordination is evident here between the Surface Transportation Board and either Union Pacific, the Trails Council, or the Iowa Heritage Foundation.  Unlike *Hendler*, the Board did not enter into a cooperative agreement with any of those three parties, nor did the Board order landowners abutting the corridor to provide access to any third party.

To the contrary, the Trails Council stated its willingness to assume financial responsibility pursuant to the Trails Act.  U.S. Proposed Findings ¶ 99, Ex. 69 at 2.  The NITU ensured the continued existence of the railroad's easement by prohibiting the rail operator from abandoning its rail corridor.  Pls.' Proposed Findings (D.E. 56) ¶ 102, Ex. 71 at 4-5 (¶ 1); 16 U.S.C. § 1247(d).  Neither the NITU nor any other federal action purported to specifically authorize a use inconsistent with the original railroad grant.

More important, the Federal Circuit's jurisprudence following *Preseault* and *Toews* explains that it is the Trails Act's interference with reversionary state law property rights, and not the physical use of the corridor as a recreational trail, that establishes the federal government's liability, if any.  *Barclay*, 443 F.3d at 1373 (re-affirming that accrual of a takings claim "is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way"); *Ladd*, 630 F.3d at 1024 (holding that entering into a trail use agreement and

converting the railway into a recreational trail are not elements of a taking claim filed under the

Trails Act).  Because neither *Preseault* nor *Toews* considered the accrual of plaintiffs' taking

claim, neither *Preseault* nor *Toews* addressed whether the United States is liable for third-party

uses made after the elements of a taking are satisfied (i.e., after the issuance of the NITU) that

exceed the scope of the railroad's underlying easement; and no Federal Circuit decision has so

held in rails-to-trails cases following *Preseault* and *Toews*.  *See Brecht v. Abrahamson*, 507 U.S.

619, 631 (1993) (stating that if a decision does not "squarely address[] [an] issue," a court

remains "free to address the issue on the merits" in a subsequent case).  Because the takings

claim "accrues on the date that a NITU issues" and interim trail use "cannot be [a] necessary

element[] of the claim," *Ladd*, 630 F.3d at 1024, the United States cannot be held liable for the

taking of a recreational trail without a showing of coordination akin to that of *Hendler*.

## VI.   <u>CONCLUSION</u>

The United States is entitled to summary judgment in its favor as to three of the four

categories of claimants discussed in this motion for the reasons specified in this motion.  To

recap:

- With respect to the claimants and the associated claim book parcels identified in Part B.1 of this motion, the United States is entitled to summary judgment because those claimants cannot show they owned the allegedly qualifying parcel on the date their alleged takings claim accrued.

- With respect to the claimants and the associated claim book parcels identified in Appendix A to this motion, the United States is entitled to summary judgment because the parcels do not adjoin the rail corridor and, therefore, have no rights upon abandonment of that corridor under Iowa Code § 327G.77.

- With respect to the claimants and the associated claim book parcels indentified in Part C.1 of this motion and in Appendices B and C to this motion, the United States is entitled to summary judgment because Union Pacific owned the relevant segments of the rail corridor in fee.

- With respect to the claimants and the associated claim book parcels identified in Appendix D to this motion, the United States is entitled to summary judgment because the relevant deeded easements were not expressly limited to railroad purposes only and trail use falls within the scope of those easements.

Finally, the United States does not object to the entry of summary judgment against it as to those claimants and the associated claim book parcels identified in Appendix E to this motion. The scope of the easement taken as to these parcels is one for railroad purposes.

DATED:  July 8, 2011                           Respectfully submitted,

                                               IGNACIA S. MORENO
                                               Assistant Attorney General
                                               Environment & Natural Resources Division

                                               By    */s/ Frank J. Singer*
                                               FRANK J. SINGER
                                               United States Department of Justice
                                               Environment & Natural Resources Division
                                               Natural Resources Section
                                               Post Office Box 603
                                               Washington, D.C. 20044-0663
                                               Tel: (202) 616-9409
                                               Fax: (202) 305-0506
                                               Email: frank.singer@usdoj.gov

                                               ATTORNEY FOR THE UNITED STATES

# APPENDIX A

to the United States' Cross-Motion for Summary Judgment
and Response to Plaintiffs' Motion for Partial Summary Judgment

CLAIMANTS WHOSE PROPERTY DOES NOT ADJOIN THE RAIL CORRIDOR

(Pertinent to Part V.B.2 of the United States' Cross-Motion)

| Claimant Identifier on Class Index | Legal Description | Parcel Description Produced as U.S. Proposed Findings Ex. No. | Subdivision Map Produced as U.S. Proposed Findings Ex. No. |
|---|---|---|---|
| 6 | Lot 1, Block 4, Mott's Addition to Hampton | 73 | 75 |
| 7 | Lot 1, Block 3, Mott's Addition to Hampton | 74 | 75 |
| 41 | Lots 187, 188, 189, 190, 191 in Bickford's Addition to Dumont | 2 | 8 |
| 42 | Lots 185 & 186 in Bickford's Addition to Dumont | 3 | 8 |
| 43 | Lot 183 & 184 of Bickford's Addition to Dumont | 4 | 8 |
| 45 | Lots 179, 180, 181 in Bickford's Addition to Dumont | 5 | 8 |
| 47.A | Lot 176 in Bickford's Addition to Dumont | 6 | 8 |
| 47.B | Lot 175 in Bickford's Addition to Dumont | 7 | 8 |
| 61 | Lots 5 & 6 in Coonley's First Addition to Bristow | 9 | 11 |
| 63.A | Lots 7 & 8 in Coonley's First Addition to Bristow | 10 | 11 |
| 64 | Lots 19, 20, and 21 in Coonley's Second Addition to Bristow | 12 | 13 |
| 75.C | Lots 557, excluding parcel D, in Allison | 14 | 15 |

Source:  U.S. Proposed Findings of Fact.

# APPENDIX B

to the United States' Cross-Motion for Summary Judgment
and Response to Plaintiffs' Motion for Partial Summary Judgment

CLAIMANTS WHO STIPULATE THAT CERTAIN DEEDS RELATE TO THE SEGMENTS
OF THE RAIL CORRIDOR ADJOINING THEIR PARCELS, BUT WHO DO NOT
STIPULATE AS TO THE EFFECT OF THOSE DEEDS

(Pertinent to Part V.C.2 of the United States' Cross-Motion)

| Claimant Identifier on Class Index | Source Deed | Source Deed Presented as Exhibit to U.S. Proposed Findings |
|---|---|---|
| 4 | Book U, Page 57 | 24 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 37.B | Book 53, Page 399 | 27 |
| 37.B | Book 54, Page 515 | 28 |
| 39.A | Book T, Page 393 | 29 |
| 39.B | | |
| 40 | | |
| 49.A | Book 53, Page 424 | 30 |
| 49.C | | |
| 51 | Book 53, Page 349 | 32 |
| 52 | Book 53, Page 346 | 55 |
| 52 | Book 53, Page 351 | 56 |
| 53.A | | |
| 55.A | | |
| 55.B | | |
| 54.A | Book 53, Page 345 | 33 |
| 54.B | | |
| 55.A | | |
| 55.B | | |
| 54.A | Book 53, Page 348 | 34 |
| 54.B | Book 53, Page 347 | 35 |
| 55.A | | |
| 55.B | | |
| 56 | Book Q, Page 461 | 37 |
| 56 | Book 53, Page 307 | 31 |
| 57.A | Book 53, Page 307 | 31 |
| 57.B | | |

1

| Claimant Identifier on Class Index | Source Deed | Source Deed Presented as Exhibit to U.S. Proposed Findings |
|---|---|---|
| 57.C | | |
| 70 | Book 54, Page 427 | 36 |
| 71.A | Book 54, Page 411 | 60 |

Source:  Jt. Status Report (D.E. 48), Ex. 1.

# APPENDIX C

to the United States' Cross-Motion for Summary Judgment
and Response to Plaintiffs' Motion for Partial Summary Judgment

CLAIMANTS WHOSE PROPERTIES ADJOIN SEGMENTS OF THE RAIL CORRIDOR
UNION PACIFIC OWNED IN FEE BUT WHO DID NOT STIPULATE AS TO THE
APPLICABLE DEED OR THE EFFECT OF THAT DEED

(Pertinent to Part V.C.3 of the United States' Cross-Motion)

| Claimant Identifier on Class Index | Applicable Railroad Deed | Produced in U.S. Proposed Findings as Ex. No. |
|---|---|---|
| 15 | Book U, Page 257 (UP Deed No. 3150) | 25 |
| 16 | | |
| 23 | Book U, Page 351 (UP Deed No. 6927) | 39 |
| 24.A | | |
| 25.A | | |
| 26.A | | |
| 39.A | Book T, Page 393; Book 38, Page 284 (UP Deed No. 6902) | 29 |
| 39.B | | |
| 40 | | |

Source:  United States' Proposed Findings.

# APPENDIX D

to the United States' Cross-Motion for Summary Judgment
and Response to Plaintiffs' Motion for Partial Summary Judgment

CLAIMANTS WHOSE PROPERTY ADJOINS SEGMENTS OF THE RAIL CORRIDOR
THAT UNION PACIFIC OPERATED BY EASEMENT CONVEYED THROUGH IOWA
PACIFIC RIGHT-OF-WAY DEEDS THAT WERE NOT LIMITED TO RAILROAD
PUPROSES ONLY

(Pertinent to Part V.C of the United States' Cross-Motion)

| Claimant Identifier on Class Index | Claimant Identifier on Class Index | Claimant Identifier on Class Index | Claimant Identifier on Class Index |
|---|---|---|---|
| 17.A | 28.F | 47.B | 63.B |
| 17.B | 28.G | 48 | 64 |
| 17.C | 30 | 49.A | 65.A |
| 17.D | 31.A | 49.B | 65.B |
| 18.A | 31.B | 49.C | 65.C |
| 18.B | 32 | 50.A | 66 |
| 18.C | 33 | 50.B | 67 |
| 21.A | 34 | 51 | 68 |
| 21.B | 35 | 52 | 69.A |
| 22.A | 36 | 53.A | 69.B |
| 22.B | 37.A | 53.B | 70 |
| 27.A | 37.B | 54.A | 71.B |
| 27.B | 37.D | 54.B | 72 |
| 27.C | 38 | 55.A | 73.A |
| 27.D | 39.A | 56 | 73.B |
| 27.E | 39.B | 57.A | 74 |
| 27.F | 40 | 57.B | 75.A |
| 27.G | 41 | 57.C | 75.C |
| 27.H | 42 | 58 | 75.D |
| 28.A | 43 | 59 | 75.E |
| 28.B | 44 | 60 | |
| 28.C | 45 | 61 | |
| 28.D | 46 | 62 | |
| 28.E | 47.A | 63.A | |

Source:  Jt. Status Report (D.E. 48), Ex. 1.

| Claimant Identifier on Class Index | Applicable Source Deed |
|---|---|
| 20.C | |
| 20.D | Book M, Page 504 |
| 20.E | |
| 20.F | |
| 31.C | Book T, Page 303 (UP Deed No. 3143) |

1

| Claimant Identifier on Class Index | Applicable Source Deed |
|---|---|
| 29 | Book M, Page 531 |
| 57.C | Book 31, Page 96 |
| 58 | Book 31, Page 96 |
| 59 | Book 31, Page 96 |
| 60 | Book 31, Page 96 |
| 76.B | Book 40, Page 130 |
| | Book U, Page 65 |

# APPENDIX E

to the United States' Cross-Motion for Summary Judgment
and Response to Plaintiffs' Motion for Partial Summary Judgment

CLAIMANTS WHOSE PROPERTY ADJOINGS SEGMENTS OF THE RAIL CORRIDOR
THAT UNION PACIFIC OPERATED BY EASEMENT OBTAINED THROUGH
CONDEMNTATION OR THROUGH A DEED FOR RAILROAD PURPOSES ONLY

(Pertinent to Part V.E of the United States' Cross-Motion)

| Claimant Identifier on Class Index |
|---|
| 19.A |
| 19.B |
| 20.A |
| 20.B |
| 25.C |
| 25.D |
| 26.C |
| 26.D |
| 26.E |
| 27.G |
| 27.H |
| 28.A |
| 28.H |

Source:  Jt. Status Report (D.E. 48), Ex. 1.

| Claimant Identifier on Class Index | Applicable Source Deed |
|---|---|
| 24.C | 3149 |
| 24.D | 3149 |

1