# In the United States Court of Federal Claims

No.  09-242L

(Filed:  February 7, 2013)
_____

| | |
|---|---|
| LOUIS A. BURGESS, et al.,<br>For themselves and as representatives of a<br>class of similarly situated persons,<br><br>                   Plaintiffs,<br><br>     v.<br><br>THE UNITED STATES,<br><br>                 Defendant. | ＊   Takings case; Cross-motions for partial<br>＊   summary judgment; Rails-to-Trails Act;<br>＊   Determination of claimant's property<br>＊   interests; *Preseault*; Iowa law construed;<br>＊   Easements for railroad purposes;  Railroad<br>＊   relocation – fee simple deeds; Deeds<br>＊   executed under threat of condemnation;<br>＊   Deeds with reverter clauses – application of<br>＊   Iowa Code § 614.24, Stale Users and<br>＊   Reversions Act (SURA); Dedication of alley<br>＊   to public use; Questions of fact precludes<br>＊   rulings as to certain parcels; Recreational<br>＊   trail and railbanking not encompassed within<br>＊   "railroad purpose"; Scope of takings; Trial.<br>＊ |

_____

## OPINION

_____

*Thomas Scott Stewart*, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for plaintiffs.

*Frank James Singer*, Environment & Natural Resources Division, United States Department of Justice, with whom was Acting Assistant Attorney General *John C. Cruden*, for defendant.

**ALLEGRA, Judge**:

Plaintiffs are landowners in Iowa, who allege that their property was taken as a result of actions taken by defendant under the National Trails System Act (the Trails Act), 16 U.S.C. §§ 1241-51.  The court certified a class on September 14, 2009.  Pending are cross-motions for partial summary judgment regarding defendant's liability as to the 148 parcels at issue.  For the reasons that follow, the court renders a split decision, concluding, as a matter of law, that defendant is liable with respect to some of these parcels and not as to others.  For still other parcels, the court determines that the existence of genuine issues of material fact precludes a

ruling as to liability.  The court's determinations are summarized in the appendix that follows this opinion.

## I.      BACKGROUND

A brief recitation of the underlying facts sets the context for this decision.

The class of plaintiffs in this case owns real estate that assertedly underlies or adjoins a 23.61 mile railroad corridor that runs through Franklin and Butler Counties, Iowa (the Railroad Line).  The Railroad Line was originally created by the Iowa Pacific Railroad Company (the Railroad),[1], which in the 1870s, established the corridor through a combination of various forms of conveyance and transfer.  In many instances, the Iowa Pacific (and its successors-in-interest, including the Dubuque and Dakota Railroad Company and the Mason City and Fort Dodge Railroad) frequently used a standard form of right-of-way deed.  Although these deeds varied slightly, they generally stated, in critical part:

> That in consideration of the sum of  [dollar amount] . . . , and the benefit [the grantors] expect to derive from the construction of their road, [grantors' name] . . . hereby grant, convey, and confirm unto the said THE IOWA PACIFIC RAILROAD COMPANY, their successors and assigns forever, the RIGHT OF WAY for their Railroad, to-wit:  A strip of land for that purpose one hundred feet wide across [legal description of land involved].

In other instances, the Railroad relocated the rail corridor and obtained new deeds.  These deeds typically recited the following language:

> That [grantors], in the consideration of the sum of [dollar amount] . . . , do hereby Grant, Bargain, Sell and Convey unto [the railroad company], its successors and assigns forever, all that tract or parcel of land lying and being in the County of Butler and State of Iowa, described as follows, to-wit:  [legal description of land involved].

The Iowa Pacific and its successors-in-interest also negotiated various other forms of conveyance in establishing the rail corridor.

Eventually, Union Pacific Railroad (Union Pacific) became the successor-in-interest to the Railroad.  On June 9, 2003, Union Pacific filed a petition for exemption with the Surface

---

[1]  As context requires, the phrase "the Railroad" may also refer herein to the Iowa Pacific and its successors-in-interest.

Transportation Board (STB),[2] seeking permission to abandon a segment on the eastern portion of the Railroad Line, specifically, that between milepost 318.36, near Hampton, Iowa, and milepost 294.75, near Allison, Iowa – a distance totaling 23.61 miles.  On June 9, 2003, the Iowa Trails Council, a non-profit trail operator, filed a petition with the STB expressing interest in negotiating a trail use agreement with Union Pacific.  Union Pacific subsequently responded that it was willing to negotiate such an agreement with the Council.  Based on this mutual expression of interest, on September 26, 2003, the STB issued a Notice of Interim Trail Use (NITU)[3] for the portion of the Railroad Line identified above.  On August 4, 2008, the Iowa Natural Heritage Foundation, on behalf of the Conservation Boards of Franklin and Butler Counties, and the Iowa Trails Council, notified the STB that it and Union Pacific had entered into a trail use agreement.

On April 20, 2009, plaintiffs filed their complaint in this court seeking just compensation under the Fifth Amendment for property they claim was taken when the STB issued a NITU pursuant to the Trails Act.  As mentioned, on September 14, 2009, the court certified a class that eventually grew to include 148 individual parcels and 77 individuals or entities.  On September 22, 2009, plaintiffs filed a second amended complaint.  On September 8, 2010, plaintiffs filed a motion for partial summary judgment on liability as to some of the parcels in the class.  On October 29, 2010, the court granted the parties' joint motion to stay briefing on plaintiffs' motion pending settlement discussions.  On June 21, 2011, after those settlement discussions appeared to have run their course, the court lifted the stay and resumed briefing of plaintiffs' motion for partial summary judgment.  On July 8, 2011, defendant filed a response to plaintiffs' motion for partial summary judgment and its own cross-motion for partial summary judgment.  Briefing and argument on these cross-motions, which now involve all 148 parcels, has now been completed.

─────────────────────

[2]  The STB has exclusive authority over all the nation's rail lines.  *See Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981).  A railroad cannot terminate rail service on a particular line without first getting the STB's consent.  *See Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007).

[3]  There are three ways to terminate rail service.  First, a railroad can apply to the STB for permission to discontinue service.  *See* 49 U.S.C. § 10903(d)(2).  Second, a railroad can ask the STB for permission to abandon the rail line through a proceeding.  *See* 49 U.S.C. § 10903(d)(1).  Finally, under the Trails Act, a railroad can terminate service through a process known as "railbanking."  Under the railbanking process, the railroad must first file an abandonment application under 49 U.S.C. § 10903, or a Notice of Exemption from that process under 49 U.S.C. § 10502.  At some point during this process, a third-party may ask the STB to issue a NITU so that the former railway can be used for interim trail use.  The interim trail is subject to the "possible future reconstruction and reactivation of the right-of-way for rail service."  49 C.F.R.  § 1152.29(a)(1)-(3).  The NITU gives the railroad 180 days in which to negotiate an interim trail use agreement with the third-party trail sponsor.  49 C.F.R. § 1152.29(d)(1).  If an agreement is reached, then the trail sponsor manages the right-of-way, subject to a possible future restoration of rail service; if an agreement is not reached, the railroad may exercise its authority to abandon the line.  49 C.F.R. §§ 1152.29(d)(1) and (e)(2).

## II.   DISCUSSION

We begin with common ground.  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment.  *Id*. at 248.  However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id*.; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *see also Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 250-52; *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)).  Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).  Where, as here, a court considers cross-motions for (partial) summary judgment, it must view each motion, separately, through this prism.[4]

### A.    Ownership Interest

In *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc), the Federal Circuit held that a threshold issue in rails-to-trails cases is who owned the land involved, with particular focus on whether the railroad in question acquired only an easement or instead obtained fee simple title to the corridor.  "Clearly, if the Railroad obtained fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors," the court observed, a plaintiff "would have no right or interest in those parcels and could have no claim related to those parcels for a taking."  *Id*.; *see also Sutton v. United States*, 107 Fed. Cl. 436, 438 (2012).  The Federal Circuit went on to explain that if an easement is found, the court must then determine whether it was subject to limitations, particularly, one "limited to use for railroad

---

[4]   *See Chevron U.S.A. Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1252-53 (Fed. Cir. 2002); *see also Estate of Hevia v. Portrio Corp.,* 602 F.3d 34, 40 (1st Cir. 2010); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010); *Stovall*, 94 Fed. Cl. at 344; *Northrop Grumman Computing Sys., Inc. v. United States*, 93 Fed. Cl. 144, 148 (2010).

purposes." *Preseault*, 100 F.3d at 1533; *see also Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010); *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).

As to the wide majority of parcels at issue, both parties focus on the legal import of the same deeds, which effectuated the conveyance of a property interest from plaintiffs' predecessors to the Railroad.   Under Iowa law, deeds are interpreted according to the ordinary rules of contract construction.  *See Weigmann v. Baier*, 203 N.W.2d 204, 206 (Iowa 1972); *Maxwell v. McCall*, 124 N.W. 760 (Iowa 1910); *Jackson v. Benson*, 7 N.W. 97 (Iowa 1880); *see also Douglas R. Bigelow Trust v. United States*, 107 Fed. Cl. 490, 493 (2012); *Sutton*, 107 Fed. Cl. at 440.  As to these parcels, both parties largely agree that there are no questions of fact and that the issue of how these deeds should be construed presents a question of law, suitable for resolution under the cross-motions.[5]  *See Steele's Lessee v. Spencer*, 26 U.S. 552, 560 (1828); *Douglas R. Bigelow Trust*, 107 Fed. Cl. at 493; *Sutton*, 107 Fed. Cl. at 439-40.  Those questions, of course, must be resolved by reference to state law, in this case, that of Iowa.  *See Rhutasel v. United States,* 105 Fed. Cl. 220, 225 (2012); *Jenkins v. United States*, 102 Fed. Cl. 598, 606 (2011); *see also Douglas R. Bigelow Trust*, 107 Fed. Cl. at 493.  As to other parcels, however, the parties raise questions of fact that, as will be seen, preclude this court from resolving much at this stage of the proceedings.

---

[5]  In *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 997 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), the Federal Circuit explained the law on this point thusly:

> The interpretation of a contract or a deed, like a patent, is ultimately a question of law.  There is nothing novel about the principle that, in the words of Justice Story, "the interpretation of written documents properly belongs to the Court, and not to the jury."  *William & James Brown & Co. v. McGran*, 39 U.S. (14 Pet.) 479, 493, 10 L.Ed. 550 (1840).  This principle has been routinely evoked in the context of contract law.  *See Levy v. Gadsby*, 7 U.S. (3 Cranch) 180, 186, 2 L.Ed. 404 (1805) ("the construction of a written evidence is exclusively with the court"); *Goddard v. Foster*, 84 U.S. (17 Wall.) 123, 142, 21 L.Ed. 589 (1872) ("[I]t is well-settled law that written instruments are always to be construed by the court . . . ."); *see also Meredith v. Picket*, 22 U.S. (9 Wheat.) 573, 575, 6 L.Ed. 163 (1824) (interpreting a deed, "[t]he Judges must construe the words of an entry, or any other title paper, according to their own opinion of the words as they are found in the instrument itself").

*See also Chevy Chase Land Co. of Montgomery Cnty., Md. v. United State*s, 158 F.3d 574, 575 (Fed. Cir. 1998).

For each of the parcels in question, the parties raise a variety of issues.  For ease and clarity of decision, the court has grouped the parcels into ten categories raising the same or similar issues.[6]  The court will address each of these categories in turn.

### 1.     Parcels for Which Liability is Uncontested.

| Claimant Name | Claim | Source |
|---|---|---|
| Reinhold Leroy and Milton Peter Heyde | 19.A & 19.B | M 565 |
| Bruce and Carol Lowery Symens | 20.A & 20.B | M 565 |
| Steven J. Koontz, Revocable Trust and Jean H. Koontz, Revocable Trust | 25.C & 25.D | M 564 |
| Sherry Wagner | 26.C - 26.E | M 564 |
| Clarence and Agnes Moore | 28.H | M 562 |

For the ten properties listed in the chart above, the parties agree that the referenced deeds created easements by condemnation.[7]  Defendant also agrees that under Iowa Code § 327G.76,[8]

---

[6]  In several instances, the parcels in these categories will be identified in a chart that lists the name(s) of the claimant(s), as well as the claim identifier that the parties have assigned to the claim in their class index.  The charts also identify the source document(s) that relate to the claim, using the record number employed in the Franklin or Butler County, Iowa recorder offices.  For instance, a conveyance located at "M 565" is recorded at Book M, page 565, or one at "53 345" is recorded at Book 53, page 345.  These same conventions are used in the appendix that follows this opinion.

[7]  Defendant initially conceded some form of liability as to fifteen parcels, but later modified its position to that currently reflected above.

[8]  This provision states:

Railroad property rights which are extinguished upon cessation of service by the railroad divest when the department of transportation or the railroad, having obtained authority to abandon the rail line, removes the track materials to the right-of-way.  If the department of transportation does not acquire the line and the railway company does not remove the track materials, the property rights which are extinguished upon cessation of service by the railroad divest one year after the railway obtains the final authorization necessary from the proper authority to remove the track materials.

Iowa Code § 327G.76; *see also Burlington Northern R.R. Co. v. Kmezich*, 48 F.3d 1047, 1049-50 (8th Cir. 1995) (discussing this provision); *Macerich Real Estate Co. v. City of Ames*, 433 N.W. 2d 726, 729 (Iowa 1988).

these easements extinguished due to non-use before the NITU in question was issued, making defendant liable for a takings.[9]

### 2.      Parcels for Which Plaintiffs Concede There is No Liability.

| Claimant Name | Claim | Source |
|---|---|---|
| Michael and Angie Harper | 1 | 42 146 |
| Verlene M. Murray | 2 | 36 271 |
| Franklin County c/o Michelle Giddings, Auditor | 3 | 36 271 |
| Robert Brandt | 6 | U 57 |
| Virginia M. Meinberg | 7 | U 57 |
| John E. and Lynn R. Byrne | 11 | U 57 |
| Larry (deceased) and Mary Jo Towne | 12.A & 12.B | U 527 |
| Dawn (McLennan) Craighton | 13 | U 527 |
| Larry D. Butt | 14 | U 527 |
| Charles P. and Deanna L. Genz | 23 | -- |
| Douglas and Karen Symens | 24.A | -- |
| Brenda Terpstra and George Terpstra (deceased) | 61 | 31 117 |
| Rolin and Robin Eberline | 63.A | 31 117 |
| Richard and Nancy J. Rieken | 64 | 31 117 |
| Emery Dickman | 69.B - D | 40 130 |
| Rodney Langfritz | 77 | -- |

Based on their review of the relevant conveyance documents and deeds (and for some of the parcels, there were no such documents), plaintiffs concede that there is no liability for the nineteen parcels listed in the chart above.

### 3.      Parcels for Which Deeds Convey a Right-of-Way – "For Their Railroad" and "For That Purpose."

| Claimant Name | Claim | Source |
|---|---|---|
| Kay F. Fox, Executer of the Estate of James Casper Fox | 17.A - 17.D | M 553 |
| Michael J. Buchanan | 18.A - 18.C | M 600; M522 |
| Bruce and Carol Lowery Symens | 20.C -  20.F | M 504 |
| Birdsell Farm Partners LLC, Jeff Birdsell | 21.A &  21.B | M 546 |
| Etna Jeanette Doyle | 22.A  &  22.B | M 546 |
| Douglas and Karen Symens | 24.C & 24.D | M 563 |
| Franklin County Land Company, Leonard Berghoefer | 27.A - 27.H | M 592; M 523; M 563 |
| Clarence and Agnes Moore | 28.A | M 563 |
| Carolyn and Burdeen Sluiter | 29 | M 531 |

---

[9] As will be discussed below, notwithstanding its stipulation, defendant contests the nature of the takings of these properties and the damages that are owed.

| | | |
|---|---|---|
| Kurt M. and Coreen Wolf | 30 | T 304; T 336 |
| Dennis and Deb Mennen | 31.A - 31.C | T 303 |
| Annette Lundie | 32 | T 337 |
| Lanny R. and Betty J. Blohm | 33 | 31 530 |
| Brenda Blohm-Baldwin | 34 | T 252 |
| Leslie Dean Buseman | 35 | T 252 |
| Douglas D. Borneman | 36 | T 252 |
| Alvin Thadd Canon | 37.A & 37.D | T 252; T 300 |
| George Reiners | 38 | T 252; T 248 |
| Finley J. and Robert J. Manifold | 46 | T 248 |
| Dorla Ferch | 48 | T 249; U 66 |
| Lowell E. and Marrian M. Newhall | 49.A & 49.B | T 249; U 66 |
| Richard L. and Cheryl A. Collins | 50.A & 50.B | T 249; U 66 |
| NE Iowa Christian Service Camp | 53.B | T 300; T 341; 31 118 |
| Lorna Yost | 58 | 31 96 |
| Carol Ann Finke | 59 | 31 96 |
| Leslie A. & Cheryl J. Palmer | 60 | 31 96 |
| James D. Winkowitsch | 62 | 31 117 |
| Rolin and Robin Eberline | 63B & 63.C | 31 93 |
| Alan and Kathy A. Eberline | 65.A - 65.C | 31 94; 31 119; 31 51 |
| Bernard and Carole Franken | 66 | 31 119 |
| Martin and Tanya Reeser | 67 | 31 51 |
| Greta Eberline, Betty Rewerts, Eldon Siemers, and Donald Siemers | 68 | 31 120 |
| Emery Dickman | 69.A | T 381 |
| Hummel Harry Farms, Inc., Kevin Hummel | 71.B | 31 50 |
| Timothy and Felicia A. Schrage | 72 | T 253 |
| Adeline M. and Alfred Johnson | 73.A & 73.B | T 253 |
| Allison-Bristow Comm. School District, Warren Davison | 74 | T 253 |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.A, 75.D - 75.F | T 253 |

For the sixty-eight properties listed in the chart above, the relevant "Right of Way Deed" indicates that the property owner grants to the Iowa Pacific "the right of way for their railroad," going on to describe the conveyance as "[a] strip of land for that purpose one hundred feet across." Plaintiffs argue that these deeds conveyed an easement limited to railroad purposes, while defendant asserts that the same instruments conveyed unlimited easements. Plaintiffs are right; defendant is wrong.

In Iowa, when construing easement grants, courts apply the "cardinal principle" that "the intention of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." *Wiegmann v. Baier*, 203 N.W.2d 204, 208 (Iowa 1972); *see also Jenkins*, 102 Fed. Cl. at 607. It is also the general rule that "where a right-of-way is granted it may be used for any purpose to which the land accommodated thereby may reasonably be

devoted unless the grant contains specific limitations . . . ." *McDonnell v. Sheets*, 15 N.W.2d 252, 255 (Iowa 1944); *see also Wiegmann*, 203 N.W.2d at 208; *Pitsenbarger v. N. Natural Gas Co.*, 198 F. Supp. 665, 672 (S.D. Iowa 1961). If the easements in question were not unrestricted, but instead limited for railroad purposes only, they were extinguished upon abandonment of the rail line. *Macerich Real Estate Co.*, 433 N.W.2d at 729-30; *see also* Iowa Code §§ 327G.76-.77.

Defendant essentially argues that the language in the deeds that says the conveyance was "for their railroad" and "for that purpose" are words of description, rather than limitation. However, Iowa cases construing deeds with similar, to nearly identical, language have reached an opposite conclusion. For example, in *Macerich Real Estate Co.*, the Iowa Supreme Court considered a deed that conveyed to a railroad "the right-of-way 100 feet in width for a single or double railroad track." 433 N.W.2d at 727. Seeking to effectuate the grantor's intent, the court held that the language of the deed "conveyed to the railroad only an easement for railroad purposes." *Id.* at 729; *see also Estate of Rockafellow v. Lihs*, 494 N.W.2d 734, 735 (Iowa Ct. App. 1992); *Haack v. Burlington N., Inc.* 309 N.W.2d 147, 150 (Iowa Ct. App. 1980). While the language of the deeds in question is not identical to that in *Macerich Real Estate Co.*,[10] there is little doubt in the court's mind that the "that purpose" language in the right-of-way deed referred to the phrase "for their railroad," leading *ipso facto* to the conclusion that the easement was for a railroad purpose. In this regard, the deeds here are far more explicit than those found, under Iowa law, to likewise grant a limited easement only for railroad purposes in *Rhutasel*, 105 Fed. Cl. at 227, and *Jenkins*, 102 Fed. Cl. at 607-08. Certainly nothing defendant argues convinces this court that the interests conveyed here were somehow broader.

Accordingly, the court concludes that the sixty-eight deeds at issue convey easements limited to railroad purposes.[11]

---

[10]  Research reveals only a single Iowa case, *Frith v. City of Dubuque*, 45 Iowa 406 (1877), in which the deed stated that the proper owner conveyed to the railroad a "right of way for their railroad." *Id.* at 408. That case, however, had nothing to do with the nature of the deed, but rather focused on whether the railroad was liable to adjacent landowners adversely affected by the building of the railway. *Id.*

[11]  As to five of these parcels (24.C, 24.D., 27.G, 27.H., and 28.A), plaintiffs make the further argument that the Railroad acquired an easement limited to railroad purposes via condemnation. Because the court concludes that these parcels were covered by deeds that conveyed easements limited to railroad purposes, it need not reach this alternative point. As to one of these parcels (37.D), plaintiffs argue that the rail line was relocated (*see* discussion, *infra*). However, they have not provided any deed evidencing this second transaction and the court thus believes that the deed conveying an easement limited to railroad purposes remains controlling.

4.    **Parcels for Which Deeds Convey a Right-of-Way –
"For Their Railroad."**

The six parcels in this fourth category (28.B through 28.G) all are covered by the same right-of-way deed.  In this deed, the conveyance is "for their railroad," but there is no succeeding language indicating that an easement of the strip of land described is being conveyed "for that purpose."  Nevertheless, the parties appear to have lumped these parcels into the category above.  And, indeed, the court sees no reason why, under the principles described above, this deed ought not also be viewed as conveying easements limited to railroad purposes.  *See also Haack*, 309 N.W.2d at 150.

5.    **Parcels for Which There Were Multiple Conveyances
Relating to the Railroad Relocation.**

| Claimant Name | Claim | Source |
|---|---|---|
| Alvin Thadd Canon | 37.B | T 250; 53 399; 54 515 |
| Lowell E. and Marrian M. Newhall | 49.C | T 249; U 66; 53 424 |
| Georgette Bauman, Trustee of Duane Bauman Trust , Georgette Bauman Revocable Trust | 51 | T 250; 53 349 |
| Evelyn and Dennis Wiegman | 52 | T 254; 53 346; 53 351 |
| NE Iowa Christian Service Camp | 53.A | T 254; 53 351 |
| Brian Winkowitsch | 54.A & 54.B | T 300; 53 345; 53 348; T 251; 53 347 |
| William A. Beadle | 55.A & 55.B; | T 251; 53 345; 53 347; 53 351; T 339 |
| Vern T. Reiher | 56 | T 342; 53 307; Q 461 |
| Kevin D. and Jeannette Snyder | 57.A | T 342; 53 307 |
| Lois A. & Joel Burgess | 70 | T 382; 54 427 |
| Hummel Harry Farms, Inc., Kevin Hummel | 71A | T 382; 54 411 |

In this fifth category are thirteen parcels that were the subject of two succeeding conveyances.  Easements on these parcels were first conveyed to the Iowa Pacific around 1870, using right-of-way deeds like those in category 3 above, that is, deeds that contain the "for their railroad" and "for that purpose" limitations.  Around 1902, the Mason City and Fort Dodge Railway Company relocated the Railroad Line within these thirteen parcels approximately sixty feet to the south.  To do this, it obtained new deeds covering this new strip of land.  Unlike the earlier deeds, these later deeds contain neither the legend "Right of Way" nor any of the limitations discussed above.  Rather, in broad terms, they convey either "all that tract or parcel of land" or "the following described premises," using the phrase "right of way" only to pinpoint the location of the strip of land conveyed vis-à-vis the prior rail line.  These deeds, moreover, convey the premises "with all the appurtenances thereto" or language to similar effect, and

relinquish various hereditary rights, including rights of dower and under the homestead laws of the State of Iowa.[12]

In the court's view, the original deeds here convey only an easement limited to railroad purposes.  The real question, though, is whether the subsequent transfer, to relocate the Railroad Line, conveyed a further easement or a fee.

A review of the deeds in question reveals that they unmistakably express the grantors' intent to convey a fee simple.  First, unlike the deeds discussed above, the deeds in question employ broad conveyance language, *i.e.*, conveying a "narrow strip of land," "with all the appurtenances."  Missing from these deeds is any limiting language in the granting or habendum clauses that describes the property conveyed as a "right of way" or which limits in any other way the estate conveyed.  This omission of such caveats is significant for under Iowa law, "[e]very conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used."  Iowa Code § 557.3.[13]  In addition, the habendum clauses in these deeds make a series of warranties more typical of a transfer of a fee, indicating, for example, that the grantors relinquish all rights of dower and under the Iowa homesteading statute.  *See Goldsmith v. Barber*, 5 N.W. 209, 211 (Iowa 1880) (discussing Iowa homestead rights).[14]  In short, these deeds appear to convey a fee simple title from a grantor to a grantee.

Plaintiffs, however, argue, that the second round of conveyances should be interpreted as conveying only a right-of-way because their predecessors-in-interest executed these deeds under threat of condemnation – a compelled consent.  In *Preseault*, the Federal Circuit reviewed

_____

[12]  In some of the referenced deeds (*e.g.*, 37.B, 56, 57.A, 70, and 71.A) the hereditary rights relinquished are specified.  In other referenced deeds (*e.g.*, 49.C, 51, 53, and 53A.), the deed not only conveys a strip or parcel of land, but also conveys "all the hereditaments and appurtenances thereunto."

[13]  The Iowa Supreme Court relied upon this statute, which was originally passed in 1851, in *Lowers*, 663 N.W. 2d at 411 (stating that "a conveyance passes all of the grantor's interests unless a contrary intent may be inferred from [the] language used"); *see also Felton v. Thomson*, 227 N.W. 529, 531 (Iowa 1929); *see generally*, Restatement (First) Property § 39 (1936) ("Where a statute provides that an otherwise effective conveyance creates an estate in fee simple absolute in the conveyee, unless the conveyance expresses an intent to create an estate other than a fee simple absolute, a limitation to the conveyee creates an estate in fee simple absolute in him, without the use of words of inheritance or any other expression of an intent to create such an estate.").  In *Rhutasel*, 105 Fed. Cl. at 227, this court likewise concluded that, under Iowa law, a deed similar to those at issue conveyed a fee simple absolute.

[14]  *See also Russell v. City of Bryan*, 919 S.W.2d 698, 705 (Tex. Ct. App. 1996); *Ham v. Stenzke Realty Co.*, 50 So. 2d 11, 14 (La. 1950); 2 Joyce Palomar, Patton and Palomar on Land Titles § 345 (3d ed. 2012).

Vermont law and concluded that a deed purporting to grant a fee simple should be construed as conveying only an easement because it was given following a survey that was the precursor to condemnation. 100 F.3d at 1536-37. Plaintiffs assert that the same should be the case under Iowa law, citing the decision of the Iowa Supreme Court in *Keokuk County v. Reiner*, 288 N.W. 676, 678 (Iowa 1939). But, *Keokuk* did not purport to construe the deed there contrary to its terms. Instead, the Court merely concluded that in interpreting a deed "given by the landowner when he has no choice in the matter, since the land can be taken by condemnation, if he refuses to convey it, we feel that such a liberal construction should be given as will effectuate the intention of the parties, and fully protect the rights of the grantor and his assigns." 288 N.W. at 678. Moreover, in 2003, the Iowa Supreme Court abrogated *Keokuk*, rejecting the logic of that decision and refusing to "[d]etermin[e] the nature of the interest conveyed by reference to the intended use by the grantee." *Lowers v. United States*, 663 N.W.2d 408, 410 (Iowa 2003); *see also Jenkins*, 102 Fed. Cl. at 611. Based on this analysis, the Court concluded that it would not treat, as conveying an easement, rather than a fee, a deed that conveyed all right, title and interest of the grantor. *Lowers*, 663 N.W.2d at 411.

*Keokuk* thus compels this court neither to look beyond the four corners of the deeds involved nor to construe language plainly conveying a fee simple as instead conveying an easement. *See Jenkins*, 102 Fed. Cl. at 611. Indeed, in *Watkins v. Iowa Central Railway Co.*, 98 N.W. 910, 913 (1904), the Iowa Supreme Court rejected the argument that the railroad "took no greater title through its deed from [a private party] than it would have acquired by condemnation proceedings," noting that "no provision of law . . . prevents [a railroad from] acquiring such title by purchase." Consistent with this view, the Iowa courts, over the last seventy years, have readily construed deeds as conveying a fee interest to railroads despite the looming presence of statutes that would allow condemnation for railroad purposes. *See, e.g., Lowers*, 663 N.W.2d at 411; *Notelzah, Inc. v. Destibal*, 489 N.W.2d 744, 746 (Iowa 1992); *Jacobs v. Miller*, 111 N.W.2d 673, 675 (Iowa 1961); *Reichard v. Chi., B&Q. R.R. Co.*, 1 N.W.2d 721, 726 (Iowa 1942).[15] Such cases, of course, ought not exist if plaintiffs are right. But they do exist, with obvious consequences for plaintiffs' compulsion theory. Accordingly, the court concludes that the deeds which effectuated the second conveyance here transferred a fee interest in the property involved.

---

[15] Plaintiffs also argue that the court should view the relocation deeds as conveying easements based on an 1876 Act that dealt with the relocation of railroads. *See* An Act to authorize the re-location of railroads, Code of Iowa, Title X, Chapter 118, Law of 1876, codified at Rev. Code of Iowa § 356 (1880). They focus on section 6 of this Act, which states that "no vested right of any person or persons, living on and along the line of any railroad removed under the provisions of this act, shall be defeated or affected by this act." *Id.* at 357. In invoking this statute, however, plaintiffs appear to overlook that: (i) the relocation here was not effectuated under the provisions of the Act (which provides for a railroad to file a court petition to effectuate the relocation, *see id.* at 356 (section 1 of the Act)); and (ii) the entire Act is inapplicable to the rail line in question (which was built in the 1870s) because the Act applied only to "such railroads as were constructed prior to the year one thousand eight hundred and sixty-six," *see id.* at 357 (section 6 of the Act).

But, what effect do these fee conveyances have on the earlier deeds that conveyed only a limited easement?  In the court's view, the answer under Iowa law is relatively plain:  acquisition by a grantee of a fee interest in the same property in which it previously held an easement extinguishes the easement, leaving only the fee.  *See Feilhaber v. Swiler*, 212 N.W. 417, 418 (Iowa 1927) (acquisition of fee resulted in "extinguishment of the easement"); *Keokuk Elec. Ry. & Power Co. v. Weismann*, 126 N.W. 60, 64 (Iowa 1910); *Marshall Ice Co. v. LaPlant*, 111 N.W. 1016, 1019 (Iowa 1907) ("no easement exists where there is unity of ownership").[16]  It follows that when the railroad obtained a fee interest in portions of the parcels in question any prior easement it possessed in the same property ceased to exist and, more importantly, no longer limited the use of the property.

Beyond this, the parties make various arguments that hinge on how the relocated Railroad Line sat on a given parcel, *e.g.*, whether the new line bisected the parcel or was on the southerly edge thereof.  These arguments, however, are inadequately developed, leaving not only material questions of fact as to which parcels were bisected in what fashions, but also overriding questions as to how Iowa law and, in particular, Iowa Code §§ 327G.76-77, apply in this situation.  This court will not resolve the latter questions on a hypothetical basis, without a clearer indication as to the actual facts in this case, which will be developed at trial.

### 6.    Parcels for Which There Were Multiple Conveyances Relating to the Construction of a Depot.

| Claimant Name | Claim | Source |
|---|---|---|
| Gregory G. Worden | 4 | U 57; O 95; M 495 |
| House-Loebig Enterprises, Inc., Vernon L. House | 5 | U 57; O 95; M 495 |
| Laipple Oil Inc. | 8 | U 57; O 95; M 495 |
| John M. and Mark J. Laipple | 9 | U 57; O 95; M 495 |
| Terry L. and Karen A. Wheeler | 10 | U 57; O 95; M 495 |
| Otto and Denise Tjaden | 39.A & 39.B | T 393; T 248 |
| Valoy J. Eilers | 40 | T 393; T 248 |

Eight additional parcels listed above were also the subject of two grants.  For three of these (39.A, 39.B, and 40), the first conveyance, in June 1872, was a right-of-way deed to the Iowa Pacific granting it an easement "for their railroad" and "that purpose" – which deed is indistinguishable from those that the court above concluded resulted in a limited easement for railroad purposes.  The second deed for these parcels, dated September 2, 1872, reflects that the

---

[16]  This concept is hardly unique to Iowa law.  *See, e.g.*, *Hidalgo Cnty. Water Control and Improvement Dist. No. 16 v. Hippchen*, 233 F.2d 712, 714 (5th Cir. 1956) (construing Texas law); *Modern, Inc. v. Florida*, 2006 WL 1627270, at *13 n.19 (M.D. Fla. June 8, 2006) ("Obviously, a person cannot have an easement in his own land because an easement merges with the title, and it follows that no easement exists so long as there is a unity of ownership of the properties involved." (quoting 20 Fla. Jur. 2d Easements §1)); *Meade v. Ginn*, 159 S.W.3d 314, 324 n.5 (Ky. 2004) (quoting 25 Am Jur. 2d Easements and Licenses § 1 (2004)).

land holders "have sold, and by these presents do convey unto the [Iowa Pacific] the following lands for depot grounds" – which deed, based upon the analysis above, the court construes as conveying a fee interest in the land described.

This second deed, however, also includes a reverter clause that states:  "in case of said Company, or their assigns, shall at any time abandon the aforesaid track as depot grounds, then and in that case, the same shall revert to me or my heirs, and legal representative."  Plaintiffs assert that this reversion was triggered when the Union Pacific abandoned the Railroad Line and that the claimants, therefore, now own a fee interest in this property.  Not so, defendant asserts, relying upon Iowa Code § 614.24, otherwise known as the Stale Users and Reversions Act (SURA).

The relevant provision, Iowa Code § 614.24, as it existed on July 4, 1966, provided in relevant part:

> No action based upon any claim arising or existing by reason of the provisions of any deed or conveyance . . . providing for any reversion, reverted interests or use restrictions in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed of conveyance . . . unless the claimant shall, by himself, or by his attorney or agent, . . . file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded . . . more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965 . . . .

The Iowa Supreme Court has, on several occasions, considered the impact of this statute on reversionary interests contained in deeds conditioned on the continuing use of land for railway purposes.  Each time it has concluded that the statute extinguishes reversions created prior July 4, 1945, that were not verified on or before July 4, 1966.  *See Lowers*, 663 N.W.2d at 412; *McKinley v. Waterloo R.R. Co.*, 368 N.W.2d 131, 138 (Iowa 1985); *Amana Soc'y v. Colony Inn, Inc.*, 315 N.W.2d 101, 108-10 (Iowa 1982); *Chi. & Nw. Ry. Co. v. City of Osage*, 176 N.W.2d 788, 792 (Iowa 1970).

In the most recent of these cases – *Lowers* – the court considered questions certified by the U.S. District Court for the Southern District of Iowa deriving from a class action in which property owners asserted that the Trails Act had effectuated a takings of their property.  *See Lowers v. United States*, 2001 WL 1200869, at *1 (S.D. Iowa May 2, 2001).  In *Lowers*, the Iowa Supreme Court held that reverters that were part of deeds issued to railroads in the 1870s and 1880s were extinguished by operation of section 614.24.  *Lowers*, 663 N.W.2d at 412.[17]  It

---

[17]  The Iowa Supreme Court's opinion does not disclose the dates of these deeds, but that information may be found in the district court's order that certified questions regarding these

- 14 -

reasoned that, under the statute, "reversionary interests created by deeds that were recorded more than twenty years prior to July 4, 196[5], were extinguished if not asserted by verified claims filed with the county recorder on or before July 4, 1966." *Id.*  It went on to find that "because the holders of the reversionary interests on which plaintiffs' federal class action is based have failed to file the necessary verified claims within the time provided by section 614.24, those reversionary interests are barred from being asserted." *Id.*  Finally, the court clarified that "[u]nder Iowa law, the bar to asserting such reversionary interests is synonymous with the extinguishment of the inchoate property interests, which may no longer be asserted." *Id.*  It thus concluded that "[s]ection 614.24 operated to vest fee simple absolute ownership in the railroad company in 1966." *Id.*; *see also McKinley*, 368 N.W.2d at 138; *City of Osage*, 176 N.W.2d at 793.

Plaintiffs have provided no basis for this court to distinguish *Lowers* or any of the other Iowa cases dealing with this issue.[18]  Nor have they offered any evidence suggesting that they

——————————————

deeds to the Iowa Supreme Court. *See Lowers v. United States*, 2001 WL 1200869, at *1 (S.D. Iowa May 2, 2001).

[18]  In its reply brief, plaintiffs cite *Lowers* for the proposition that section 614.24 does not apply to railroad abandonments prior to 1980 (using an "!" for emphasis).  It appears, however, that plaintiffs' counsel has either not read this opinion (which is unlikely) or is misrepresenting what it holds.

In *Lowers*, the class-action plaintiffs made the same arguments plaintiffs make now, relying on a 1980 amendment to section 614.24 that added the following subsection (2):

> The provisions of this section [614.24] requiring the filing of a verified claim shall not apply to the reversion of railroad property if the reversion is caused by the property being abandoned for railway purposes and the abandonment occurs after [July 1, 1980].  The holder of such a reversionary interest may bring an action based upon the interest regardless of whether a verified claim has been filed under this section at any time after July 4, 1965.

1980 Iowa Acts ch. 1115, §6.  The plaintiffs in *Lowers* asserted, as plaintiffs do here, that "this amendment abrogated the application of section 614.24 with regard to reversionary interests in railroad property triggered by railroad abandonments." *Lowers*, 663 N.W.2d at 412.  The Iowa Supreme Court made short shrift of this claim, indicating that:

> We believe that it was the intent of this legislation that persons holding reversionary interests in railway property that were not barred on the date the amendment became effective were no longer required to file a verified claim with the county recorder in order to thereafter assert their interest in a legal action.  It

filed verified claims as to their reversions on or before July 4, 1966.  Based on *Lowers*, the court thus concludes that Iowa Code § 614.24 likewise operated to vest fee simple absolute ownership of the parcels at issue in the Railroad in 1966.  *See Rhutasel*, 105 Fed. Cl. at 227.

The five remaining parcels in this category (4, 5, 8, 9, and 10) also were the subject of two conveyances, with the second being for a depot.  They differ from the first three parcels in this category in that the parties disagree as to which documents effectuated the first of these conveyances.  This dispute, however, is irrelevant because the parties agree that the second conveyance occurred as the result of a deed that was signed on July 24, 1879.  Like the depot deeds discussed above, that deed plainly conveyed to the Dubuque and Dakota Rail Road Company a fee interest, which primed any preexisting easement.  Leaving little doubt in this regard, the deed indicates that the property owners "do hereby sell and convey . . . the following described premises" and further indicates that "said tract sold being for Depot Grounds and other Railroad purposes."  Also like the depot deeds discussed above, the July 24, 1879, deed contains a reverter clause, indicating that if the tract is "ceased to be used for such purposes," *i.e.,* for the depot and associated uses, it would "revert back to [the property owners] (except right of way)."[19]  For the reasons discussed above, Iowa Code §614.24 also caused this reverter to extinguish in 1966, there being no indication that plaintiffs ever filed the verified claim required by the statute.  Accordingly, like the three parcels discussed above, the five parcels that were subject to the July 24, 1879, deed also were owned by the railroad in fee simple absolute.

As to all of the parcels in this category, then, the end result is the same – the holders of these parcels have failed to establish that they have the requisite property interest and their claims, therefore, must be dismissed.

### 7. Parcels Over Which There is a Dispute as to Whether the Land Adjoins the Railroad.

| Claimant Name | Claim | Source |
|---|---|---|
| Thomas and Mary Jean Van Ellen | 41 | T 248 |
| William R. and Jeanne J. Reysack | 42 | T 248 |
| Lois J. Silver | 43 | T 248 |

was not intended to revive property interests previously extinguished by SURA prior to the effective date of the amendment.

*Id.* at 413.  The court noted that "[t]o interpret the 1980 amendment as reviving inchoate property interests that had been extinguished under the 1965 version of section 614.24 would have the disquieting effect of disturbing real estate ownership established more than thirty years ago."  *Id.*

[19]  That this deed makes provision for the continuation of a right-of-way upon the reversion of the property to the original owners is, of course, further indication that it otherwise conveys a fee simple to the railroad.

| Lois A. Gallope | 45 | T 248 |
| Mark and Chris Uthe | 47.A | T 248 |
| Mark Uthe | 47.B | T 248 |

As can be seen, this category involves six parcels. Easements on these parcels were transferred to the Railroad using a "Right of Way" deed identical to those in category 3 above, *i.e.*, one in which the transfer was "for their Railroad" and "for that purpose." What distinguishes these parcels from those in category 3 is a dispute as to whether they adjoin the Railroad Line. The relevant maps show a sixteen-foot wide alley between these parcels and the Railroad Line; the parties agree that "the original plat tendered the alley in fee simple to the town of Dumont, Iowa." That the alley was tendered to Dumont does not mean, however, that it necessarily became public land. Rather, under Iowa law, dedication for public use requires not only that there be an intent to dedicate and a dedication, but acceptance by the public or a party to whom the dedication is made. *See State v. Hutchison*, 721 N.W.2d 776, 782 (Iowa 2006); *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 734 (Iowa 2002). And the parties, for various reasons, disagree as to whether Dumont ever accepted the alley so as to effectuate the dedication. In the court's view, there are genuine issues of material fact as to this issue which preclude the court from resolving this issue as a matter of law.[20] Accordingly, this issue must await trial.[21]

### 8.     Parcels Subject to Arbitration Agreement for Which No Actual Conveyance Document is Available.

The three parcels in this group (22.C, 25.B, and 26.B) were among the parcels that were the subject of an arbitration agreement that was entered into between the property owners and the Iowa Pacific on June 24, 1872. That agreement provided, in pertinent part, as follows:

Whereas the Iowa Pacific Railroad Company has located its line of Railway through, over and across [property] owned by Geo. W. Hansell, one of the parties hereto, and the said parties are unable to agree upon the value of the right of way

---

[20] Additional genuine issues of material fact exist as to who owns parcel 47.B.

[21] Plaintiffs also glancingly argue that the alley became the property of the adjoining property owners via adverse possession. But, "[i]t has long been the rule in Iowa that the doctrine of adverse possession does not apply to governmental entities." *Fenci v. City of Harpers Ferry*, 620 N.W.2d 808, 816 n.5 (Iowa 2000); *see also Stecklein v. City of Cascade*, 693 N.W.2d 335, 340 (Iowa 2005); *Johnson v. City of Shenandoah*, 133 N.W. 761, 763 (Iowa 1911). Hence, if the property did pass to Dumont by virtue of dedication, it did not return to the property owners by adverse possession. Rather, assuming Dumont obtained the property, the only way for plaintiffs to demonstrate that the property returned to its original owners would be by demonstrating that the town had abandoned its interest. *See Stecklein*, 693 N.W.2d at 340-41. This requires more than proof of nonuse. *Id.* (citing numerous cases). Plaintiffs have not argued this theory.

so to be taken.  Now therefore for the purpose of avoiding litigation and costs, and for the purposes of ascertaining the value of said right of way we the said Iowa Pacific Railroad Company . . . , and the said George W. Hansell owner of said premises have chosen and by these presents do choose and empower the following named persons as referees or arbitrators of said matter, directing the said parties . . . to proceed . . . and view the said premises and this said line, and to appraise the value for said right of way.  And the said parties to this submission hereby agree to and with each other that they will stand to and truly perform the decision so rendered, this said Railroad Co. by paying the amounts so found, and this said Geo W. Hansell by thereupon making and delivering to said Co's agent a good and sufficient deed of such right of way across said premises one hundred feet in width.

While this agreement anticipates a subsequent conveyance, the parties have produced no deed, condemnation decree, or other document that shows that a transfer took place and, if so, under what terms.

The Federal Circuit has made quite clear that "[i]t is plaintiffs' burden to establish cognizable property interests for purposes of their takings claims."  *Klamath Irrigation Dist. v. United States*, 635 F.3d 505, 519 n.12 (Fed. Cir. 2011); *see also Estate of Hage v. United States*, 687 F.3d 1281, 1291 (Fed. Cir. 2012); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005); *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003).  And this requirement plainly applies to rails-to-trails cases.  *See Thomas v. United States*, 106 Fed. Cl. 467, 478 (2012); *Rhutasel*, 105 Fed. Cl. at 226-27.  The affected plaintiffs have not met their burden because the evidence merely suggests that a right-of-way was transferred, but does not prove whether such a limited interest was actually conveyed, via a deed or condemnation (as opposed to a broader fee interest), or if an easement was conveyed, whether that interest was unrestricted, subject only to railroad use, or subject to some other limitation.  Nor, contrary to plaintiffs' claims, does the agreement quoted above evidence a condemnation of a right-of-way limited to rail purposes.  Accordingly, as to these parcels, plaintiffs have failed to establish that they have a cognizable property interest, requiring that the claims relating to these parcels be dismissed.[22]

### 9.   Parcels Subject to Arbitration Agreement and Potentially a Subsequent Deed.

The parties agree that the four parcels in this group (21.C, 22.D, 25.A, and 26.A) were also the subject of the arbitration agreement discussed above.  Defendant, however, contends that these parcels were subsequently the subject of a deed executed by Geo. W. Hansell and his wife on July 6, 1880.  That deed reflects that "in consideration of the sum of One Dollar in hand

---

[22]  The court reaches the same conclusion as to parcel 24.B, for which plaintiffs have produced neither a deed nor any other evidence that the claimant possessed the requisite property interest.

paid," the Hansells "do hereby sell unto the Dubuque and Dakota Railroad Company, the following described premises . . . ."  The deed contains neither references to a right-a-way nor a reverter clause.  Plaintiffs argue that this deed does not relate to these four parcels.  However, as with the parcels discussed above, they have not produced any other deed that evidences a conveyance of some property interest to the railroad.  Rather, they reiterate their argument that the agreement itself evidences a condemnation of a right-of-way limited to rail purposes.

In the court's view, defendant prevails as to this category of parcels for two reasons.  First, if the July 6, 1880, deed applies to these properties, it plainly evidences a conveyance of a fee interest, and not the transfer of a limited easement.  In this regard, there is little to distinguish this deed from those held above to convey a fee simple absolute.  Second, if, as plaintiffs contend, the July 6, 1880, deed does not apply to these parcels, plaintiffs still cannot prevail because they have failed to establish that they have a cognizable property interest in the parcels in question.  For the reasons discussed above, the court again disagrees that the arbitration agreement evidences any form of conveyance, either by deed or condemnation.  In short, the claims related to these parcels must also be dismissed.

### 10.    Parcels for Which the Evidence is Disputed.

| Claimant Name | Claim | Source |
|---|---|---|
| Lowell A. and Patricia C. Stock | 15 | M 495; U 527 |
| Robert Lee Fink | 16 | M 495; U 527 |
| Alvin Thadd Canon | 37.C | T 250; 54 515 |
| Junior C. and Marlene G. Havig | 44 | T 248 |
| Kevin D. and Jeannette Snyder | 57.B & 57.C | T 250; 54 515; 31 96; 53 307 |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.B & 75.C | T 253 |
| City of Allison | 76.A & 76.B | T 253; 40 130 |

The parties dispute which conveyances apply to the ten parcels listed above, making various conflicting factual arguments that rely, *inter alia*, on the chain of title and plat maps in the record.  In the court's view, genuine issues of material fact preclude the entry of summary judgment as to any of these parcels.

*          *          *          *          *

A chart summarizing the court's conclusions regarding the parcels at issue may be found in Appendix A to this opinion.

### B.    Remaining Liability Issues

With respect to the parcels as to which an easement limited to railroad purposes was conveyed, the next issue is whether the NITU authorized use of an easement exceeding that

purpose.[23]  Defendant seems to contend (although at other points it denies doing so) that recreational trail use – the activity authorized by the Trails Act and the NITUs – is within the scope of permissible uses for the easements, essentially arguing that it is a railroad purpose. Based on this claim, defendant suggests that there has been no takings of the easements in question because the NITU did not authorize uses beyond the scope of the easements granted.

In fact, under Iowa law, creating a public recreational trail is not considered an act in furtherance of a railroad purpose.  *See McKinley*, 368 N.W.2d at 133-35; *see also Estate of Rockafellow*, 494 N.W.2d at 736 (suggesting that this result is dictated by Iowa Code § 327G.77).  Indeed, the Federal Circuit treated the differences between trails and rails as self-evident in another Trails Act case, *Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004), where the circuit court identified fundamental differences between using the easement for a trail and for a railroad.[24]  It observed that these "different uses create different burdens," which is important because under the state law at issue in that case (California), "the landowner's grant defines the burden with which the land is burdened."  *Id*. at 1376-77; *see also Beres v. United States*, 104 Fed. Cl. 408, 455-56 (2012); *Thompson v. United States*, 101 Fed. Cl. 416, 433 (2011).  The latter point, of course, is also true in Iowa, giving this court every reason to believe that what was said in *Toews* cannot be gainsaid here.  *See Rhutasel*, 105 Fed. Cl. at 228-30 (applying Iowa law and finding that "when a landowner grants a railroad purposes easement,

---

[23]  *See Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010) ("It is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement."); *Preseault*, 100 F.3d at 1552 ("[I]f the terms of the easement when first granted are broad enough under then-existing state law to encompass trail use, the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose.").

[24]  In this regard, Judge Plager, writing on behalf of the court, stated:

And it appears beyond cavil that use of these easements for a recreational trail – for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway – is not the same use made by a railroad, involving tracks, depots, and the running of trains.  The different uses create different burdens.  In the one case there was an occasional train passing through (no depots or turntables or other appurtenances are involved on these rights of way).  In the other, individuals or groups use the property, some passing along the trail, others pausing to engage in activities for short or long periods of time.

*Toews*, 376 F.3d at 1376-77.  Continuing along these lines, Judge Plager added:  "Some might think it better to have people strolling on one's property than to have a freight train rumbling through.  But that is not the point.  The landowner's grant authorized one set of uses, not the other."  *Id*. at 1377.

once the Railroad's operations discontinue, the railroad purposes easement extinguishes."). Much of what has been said also applies to railbanking, which, despite the absence of any Iowa case on point, also does not appear to be consistent with the railroad purpose for which the easements in question were granted.[25] Defendant does not cite any directly contrary Iowa case – and, for good reason, as research reveals none.[26]

Next, in a well-rehearsed argument, defendant asseverates that any easement it took was for railbanking purposes only, not for recreational trail uses. As other courts have noted, this claim ignores the fact that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Caldwell v. United States*, 391 F.3d 1226, 1233-34 (Fed. Cir. 2004), *cert. denied*, 546 U.S. 826 (2005) (emphasis omitted). The NITU, and the Trail Act from which it derives, pave the way not only for railbanking but for the issuance of the interim trail use agreement. Any other interpretation of the Trail Act "divorces the language of the Act from its history, purpose, and regulatory scheme." *Jenkins*, 102 Fed. Cl. at 614. Under these circumstances, defendant should not be heard to argue that it effectuated a takings only for railbanking purposes and that some other unrelated entities (either a state or political subdivision thereof or a third-party) effectuated a takings of the property for use as a trail. For these reasons, two other judges of this court, applying Iowa law, have rebuffed similar attempts by defendant to narrow the scope of its takings. *See Rhutasel*, 105 Fed. Cl. at 230; *Jenkins*, 102 Fed. Cl. at 613-16. The court sees no reason to depart from these well-reasoned opinions, particularly in light of the host of cases that have reached similar conclusions, albeit under different state laws.[27]

_____

[25]   *See Toews*, 376 F.3d at 1381; *Haggart v. United States*, 2012 WL 6685542, at *20 (Fed. Cl. Dec. 18, 2012); *Toscano v. United States*, 107 Fed. Cl. 179, 185 (2012); *Thomas v. United States*, 106 Fed. Cl. 467, 487-88 (2012); *Macy Elevator, Inc. v. United States*, 105 Fed. Cl. 195, 201 (2012); *Biery v. United States*, 99 Fed. Cl. 565, 572-73 (2011) (cataloguing cases from various jurisdictions); *Ellamae Phillips Co. v. United States*, 99 Fed. Cl. 483, 486 (2011) ("We find that trail use is outside the scope of the easement granted . . . irrespective of the existence of railbanking.").

[26]   Nor is there any indication that Iowa would treat these uses as within the original grant purpose under the "shifting use" doctrine. *See Preseault*, 100 F.3d at 1543 (rejecting the "shifting use" argument and noting that "there are differences in the degree and nature of the burden imposed" from trail use); *Toews*, 376 F.3d at 1379 ("[A] public transportation easement defined as one for railroad purposes is not stretchable into an easement for a recreational trail and linear park for skateboarders and picnickers . . . ."); *Toscano*, 107 Fed. Cl. at 185; *Biery*, 99 Fed. Cl. at 576-77.

[27]   *See also Haggart*, 2012 WL 6685542, at *21; *Sutton*, 107 Fed. Cl. at 440; *Thomas*, 106 Fed. Cl. at 487. Based on its resolution of these issues, this court need not proceed to the third

### III.   CONCLUSION

This court need go no further.  Based on the foregoing:  the court **GRANTS**, **in part**, and **DENIES**, **in part**, plaintiffs' second motion for partial summary judgment, and **GRANTS**, **in part**, and **DENIES**, **in part**, defendant's cross-motion for partial summary judgment.  On or before March 8, 2013, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.  The parties shall have at least one serious discussion regarding settlement before filing this report.

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

---

stage of the *Preseault* analysis, focusing on whether the easements in question had been abandoned.  *See Preseault*, 100 F.3d at 1552; *Haggart*, 2012 WL 6685542 at *20.

| Claimant | Claim | Source | Resolution |
|----------|-------|--------|------------|
| **Group 1:  Parcels for Which Liability is Uncontested** | | | |
| Reinhold Leroy and Milton Peter Heyde | 19.A | M 565 | Liability |
| Reinhold Leroy and Milton Peter Heyde | 19.B | M 565 | |
| Bruce and Carol Lowery Symens | 20.A | M 565 | |
| Bruce and Carol Lowery Symens | 20.B | M 565 | |
| Steven J. Koontz, Revocable Trust and Jean H. Koontz, Revocable Trust | 25.C | M 564 | |
| Steven J. Koontz, Revocable Trust and Jean H. Koontz, Revocable Trust | 25.D | M 564 | |
| Sherry Wagner | 26.C | M 564 | |
| Sherry Wagner | 26.D | M 564 | |
| Sherry Wagner | 26.E | M 564 | |
| Clarence and Agnes Moore | 28.H | M 562 | |
| | | | |
| **Group 2:  Parcels for Which Plaintiffs Concede There is No Liability** | | | |
| Michael and Angie Harper | 1 | 42 146 | Dismiss |
| Verlene M. Murray | 2 | 36 271 | |
| Franklin County c/o Michelle Giddings, Auditor | 3 | 36 271 | |
| Robert Brandt | 6 | U 57 | |
| Virginia M. Meinberg | 7 | U 57 | |
| John E. and Lynn R. Byrne | 11 | U 57 | |
| Larry (deceased) and Mary Jo Towne | 12.A | U 527 | |
| Larry (deceased) and Mary Jo Towne | 12.B | U 527 | |
| Dawn (McLennan) Craighton | 13 | U 527 | |
| Larry D. Butt | 14 | U 527 | |
| Charles P. and Deanna L. Genz | 23 | -- | |
| Douglas and Karen Symens | 24.A | -- | |
| Brenda Terpstra and George Terpstra (deceased) | 61 | 31 117 | |
| Rolin and Robin Eberline | 63.A | 31 117 | |
| Richard and Nancy J. Rieken | 64 | 31 117 | |
| Emery Dickman | 69.B | 40 130 | |
| Emery Dickman | 69.C | -- | |
| Emery Dickman | 69.D | -- | |
| Rodney Langfritz | 77 | -- | |

| Claimant | Claim | Source | Resolution |
|---|---|---|---|
| **Group 3: Parcels for Which Deeds Convey a Right-of-Way "For Their Railroad" and "For That Purpose"** | | | |
| Kay F. Fox, Executer of the Estate of James Casper Fox | 17.A | M 553 | Liability |
| Kay F. Fox, Executer of the Estate of James Casper Fox | 17.B | M 553 | |
| Kay F. Fox, Executer of the Estate of James Casper Fox | 17.C | M 553 | |
| Kay F. Fox, Executer of the Estate of James Casper Fox | 17.D | M 553 | |
| Michael J. Buchanan | 18.A | M 600 | |
| Michael J. Buchanan | 18.B | M 522 | |
| Michael J. Buchanan | 18.C | M 522 | |
| Bruce and Carol Lowery Symens | 20.C | M 504 | |
| Bruce and Carol Lowery Symens | 20.D | M 504 | |
| Bruce and Carol Lowery Symens | 20.E | M 504 | |
| Bruce and Carol Lowery Symens | 20.F | M 504 | |
| Birdsell Farm Partners LLC, Jeff Birdsell | 21.A | M 546 | |
| Birdsell Farm Partners LLC, Jeff Birdsell | 21.B | M 546 | |
| Etna Jeanette Doyle | 22.A | M 546 | |
| Etna Jeanette Doyle | 22.B | M 546 | |
| Douglas and Karen Symens | 24.C | M 563 | |
| Douglas and Karen Symens | 24.D | M 563 | |
| Franklin County Land Company, Leonard Berghoefer | 27.A | M 592 | |
| Franklin County Land Company, Leonard Berghoefer | 27.B | M 592 | |
| Franklin County Land Company, Leonard Berghoefer | 27.C | M 523 | |
| Franklin County Land Company, Leonard Berghoefer | 27.D | M 523 | |
| Franklin County Land Company, Leonard Berghoefer | 27.E | M 523 | |
| Franklin County Land Company, Leonard Berghoefer | 27.F | M 523 | |
| Franklin County Land Company, Leonard Berghoefer | 27.G | M 563 | |
| Franklin County Land Company, Leonard Berghoefer | 27.H | M 563 | |
| Clarence and Agnes Moore | 28.A | M 563 | |
| Carolyn and Burdeen Sluiter | 29 | M 531 | |
| Kurt M. and Coreen Wolf | 30 | T 304; T336 | |

| Claimant | Claim | Source | Resolution |
|---|---|---|---|
| Dennis and Deb Mennen | 31.A | T 303 | Liability |
| Dennis and Deb Mennen | 31.B | T 303 | |
| Dennis and Deb Mennen | 31.C | T 303 | |
| Annette Lundie | 32 | T 337 | |
| Lanny R. and Betty J. Blohm | 33 | 31 530 | |
| Brenda Blohm-Baldwin | 34 | T 252 | |
| Leslie Dean Buseman | 35 | T 252 | |
| Douglas D. Borneman | 36 | T 252 | |
| Alvin Thadd Canon | 37.A | T 252 | |
| Alvin Thadd Canon | 37.D | T 300 | |
| George Reiners | 38 | T 252; T 248 | |
| Finley J. and Robert J. Manifold | 46 | T 248 | |
| Dorla Ferch | 48 | T 249; U 66 | |
| Lowell E. and Marrian M. Newhall | 49.A | T 249; U 66 | |
| Lowell E. and Marrian M. Newhall | 49.B | T 249; U 66 | |
| Richard L. and Cheryl A. Collins | 50.A | T 249; U 66 | |
| Richard L. and Cheryl A. Collins | 50.B | T 249; U 66 | |
| NE Iowa Christian Service Camp | 53.B | T 300; T 341; 31 118 | |
| Lorna Yost | 58 | 31 96 | |
| Carol Ann Finke | 59 | 31 96 | |
| Leslie A. & Cheryl J. Palmer | 60 | 31 96 | |
| James D. Winkowitsch | 62 | 31 117 | |
| Rolin and Robin Eberline | 63.B | 31 93 | |
| Rolin and Robin Eberline | 63.C | 31 93 | |
| Alan and Kathy A. Eberline | 65.A | 31 94 | |
| Alan and Kathy A. Eberline | 65.B | 31 119 | |
| Alan and Kathy A. Eberline | 65.C | 31 51 | |
| Bernard and Carole Franken | 66 | 31 119 | |
| Martin and Tanya Reeser | 67 | 31 51 | |
| Greta Eberline, Betty Rewerts, Eldon Siemers, and Donald Siemers | 68 | 31 120 | |
| Emery Dickman | 69.A | T 381 | |

| Claimant | Claim | Source | Resolution |
|---|---|---|---|
| Hummel Harry Farms, Inc., Kevin Hummel | 71.B | 31 50 | Liability |
| Timothy and Felicia A. Schrage | 72 | T 253 | |
| Adeline M. and Alfred Johnson | 73.A | T 253 | |
| Adeline M. and Alfred Johnson | 73.B | T 253 | |
| Allison-Bristow Comm. School District, Warren Davison | 74 | T 253 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.A | T 253 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.D | T 253 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.E | T 253 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.F | T 253 | |
| **Group 4:  Parcels for Which Deeds Convey a Right-of-Way - "For Their Railroad"** | | | |
| Clarence and Agnes Moore | 28.B | M 505 | Liability |
| Clarence and Agnes Moore | 28.C | M 505 | |
| Clarence and Agnes Moore | 28.D | M 505 | |
| Clarence and Agnes Moore | 28.E | M 505 | |
| Clarence and Agnes Moore | 28.F | M 505 | |
| Clarence and Agnes Moore | 28.G | M 505 | |
| **Group 5:  Parcels for Which There Were Multiple Conveyances Relating to the Railroad Relocation** | | | |
| Alvin Thadd Canon | 37.B | T 250; 53 399; 54 515 | Question of Fact |
| Lowell E. and Marrian M. Newhall | 49.C | T 249; U 66; 53 424 | |
| Georgette Bauman, Trustee of Duane Bauman Trust, Georgette Bauman Revocable Trust | 51 | T 250; 53 349 | |
| Evelyn and Dennis Wiegman | 52 | T 254; 53 346; 53 351 | |
| NE Iowa Christian Service Camp | 53.A | T 254; 53 351 | |
| Brian Winkowitsch | 54.A | T 300; 53 345; 53 348 | |
| Brian Winkowitsch | 54.B | T 251; 53 345; 53 347 | |

| Claimant | Claim | Source | Resolution |
|---|---|---|---|
| William A. Beadle | 55.A | T 251; 53 345; 53 347; 53 351 | Question of Fact |
| William A. Beadle | 55.B | T 339; 53 351; 53 345; 53 347 | |
| Vern T. Reiher | 56 | T 342; 53 307; Q 461 | |
| Kevin D. and Jeannette Snyder | 57.A | T 342; 53 307 | |
| Lois A. & Joel Burgess | 70 | T 382; 54 427 | |
| Hummel Harry Farms, Inc., Kevin Hummel | 71.A | T 382; 54 411 | |
| **Group 6:  Parcels for Which There Were Multiple Conveyances Relating to the Construction of a Depot** | | | |
| Gregory G. Worden | 4 | U 57; O 95; M 495 | Dismiss |
| House-Loebig Enterprises, Inc., Vernon L. House | 5 | U 57; O 95; M 495 | |
| Laipple Oil Inc. | 8 | U 57; O 95; M 495 | |
| John M. and Mark J. Laipple | 9 | U 57; O 95; M 495 | |
| Terry L. and Karen A. Wheeler | 10 | U 57; O 95; M 495 | |
| Otto and Denise Tjaden | 39.A | T 393; T 248 | |
| Otto and Denise Tjaden | 39.B | T 393; T 248 | |
| Valoy J. Eilers | 40 | T 393; T 248 | |
| **Group 7:  Parcels for Which There is a Dispute as to Whether the Land Adjoins the Railroad** | | | |
| Thomas and Mary Jean Van Ellen | 41 | T 248 | Question of Fact |
| William R. and Jeanne J. Reysack | 42 | T 248 | |
| Lois J. Silver | 43 | T 248 | |
| Lois A. Gallope | 45 | T 248 | |
| Mark and Chris Uthe | 47.A | T 248 | |
| Mark Uthe | 47.B | T 248 | |

| Claimant | Claim | Source | Resolution |
|---|---|---|---|
| **Group 8:  Parcels Subject to Arbitration Agreement for Which No Actual Conveyance Document is Available** | | | |
| Etna Jeanette Doyle | 22.C | UP 3148 | Dismiss |
| Douglas and Karen Symens | 24.B | No Conveyance on Record | |
| Steven J. Koontz, Revocable Trust and Jean H. Koontz, Revocable Trust | 25.B | UP 3148 | |
| Sherry Wagner | 26.B | UP 3148 | |
| | | | |
| **Group 9:  Parcels Subject to Arbitration Agreement and Potentially a Subsequent Deed** | | | |
| Birdsell Farm Partners LLC, Jeff Birdsell | 21.C | UP 3148; U 351 | Dismiss |
| Etna Jeanette Doyle | 22.D | UP 3148; U 351 | |
| Steven J. Koontz, Revocable Trust and Jean H. Koontz, Revocable Trust | 25.A | UP 3148;  U 351 | |
| Sherry Wagner | 26.A | UP 3148; U 351 | |
| | | | |
| **Group 10:  Parcels for Which the Evidence is Disputed** | | | |
| Lowell A. and Patricia C. Stock | 15 | M 495; U 527 | Question of Fact |
| Robert Lee Fink | 16 | M 495; U 527 | |
| Alvin Thadd Canon | 37.C | T 250; 54 515 | |
| Junior C. and Marlene G. Havig | 44 | T 248 | |
| Kevin D. and Jeannette Snyder | 57.B | T 342; 53 307 | |
| Kevin D. and Jeannette Snyder | 57.C | 31 96; 53 307 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.B | T 253 | |
| United Suppliers, Inc. (successor in interest to Allison-Kesley AG Center, Inc.), Brad Oelmann | 75.C | T 253 | |
| City of Allison | 76.A | T 253 | |
| City of Allison | 76.B | 40 130 | |